[Civ. No. 1824. First Appellate District.—May 25, 1916.]

M. G. WEST, Appellant, v. CITY OF OAKLAND (a Municipal Corporation) et al., Respondents.

CITY OF OAKLAND—AWARD OF CONTRACT FOR JAIL IN CITY HALL—DISCRETION OF CITY COUNCIL—CONSTRUCTION OF CHARTER.—The city council of the city of Oakland, under the provisions of sections 126 and 130 of its charter, has a discretion in awarding a contract for the construction of a jail in its city hall to the "lowest responsible bidder," to consider the quality of the respective locking devices upon which the various bids were predicated, and is not required to award the contract to the lowest responsible bidder subject to the only limitation that such bidder shall not have been "delinquent or unfaithful in any former contract with the city."

ID.—MEANING OF TERM "LOWEST RESPONSIBLE BIDDER"—DISCRETION OF COUNCIL.—The term "lowest responsible bidder" means the lowest bidder whose offer best responds in quality, fitness, and capacity to the particular requirements of the proposed work; and, where

by the use of these terms the council has been invested with discretionary powers as to which is the lowest responsible bidder, having regard to the quality and adaptability of the material or article to the particular requirements of its use, such discretion will not be interfered with by the courts in the absence of direct averments and proof of fraud.

ID.—INVESTIGATION OF JAIL-LOCKING DEVICES—CO-OPERATION OF UNSUCCESSFUL BIDDER—LACK OF AUTHORITY OF COUNCIL NOT SUBJECT TO QUESTION.—An unsuccessful bidder for the installing and furnishing of a jail in a city hall cannot complain that the municipal board had no authority to make investigations into the merits of the locking devices submitted by the various bidders on the ground that the plans and specifications did not call for or require the submission of models of devices, nor provide for comparison of the respective devices, where such bidder co-operated with the board in making such comparisons and investigations to the extent of exhibiting before the board a working model of its particular device, and of suggesting the names of cities where experts might observe jails where such device was in actual operation.

ID.—AWARD OF BID—SPECIFIC FINDING NOT REQUIRED.—It is not necessary for a municipal board in making a record of its action in the rejection of bids to also make an entry of its reason for so doing, but the real reason may be shown upon the trial of the case involving the integrity and action of the board.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. William H. Donahue, Judge.

The facts are stated in the opinion of the court.

R. H. Cross, and Arthur H. Brandt, for Appellant.

T. C. Van Ness, Jr., Ben F. Woolner, City Attorney, and Charles A. Beardsley, Assistant City Attorney, for Respondents.

RICHARDS, J.—This is an appeal from a judgment in favor of the defendants, and from an order denying a new trial.

The facts of the case are these: The city of Oakland being about to construct a jail in the upper stories of its city hall, advertised for bids for furnishing and installing said jail. It is conceded that in all respects the legal steps leading up to the award of the contract for such jail construction were duly

and regularly taken.  In the call for bids the council directed the attention of prospective bidders to the plans and specifications of the proposed work, and required that all bids should be prepared and submitted in accordance therewith.  A very material element in the mechanical construction of a modern jail is the locking device; and with reference to this portion of the furnishings to be bid upon, the plans and specifications provided that "The locking device should be simple in construction and operation and entirely free from complicated parts liable to unusual wear.  The device shall have positive lever action; shall have indexes indicating the number of each cell so that the operator can set with the lever each door or the entire bank of cells, which shall then with a single movement of the main operating levers open or close any one door or all."  With respect to locking devices for jails the record sufficiently shows that there are several kinds, or rather, designs of these devices differing in mechanical construction, and either patented or controlled by different companies, who are competitors for the installation each of its own particular form or design of locking device.  There were four competitors who responded to the defendant's call for bids—the M. G. West Company, the Pauly Jail Building Company, the Waterhouse & Price Company, and the Ralston Iron Works, Inc.  The M. G. West Company submitted with its bid a design of locking device known as the Stewart locking device, which it offered to install in connection with the rest of the work bid upon for the sum of $24,528.50.  The Pauly Jail Building Company submitted its own pattern of locking device with its bid for the entire work in the sum of $30,127.  The other two bidders were still higher in their bids by several thousand dollars.  When the bids were opened the officials of the city council held several sessions for the purpose of investigating the merits of the several locking devices presented, and even sent experts in jail construction to the city of Sacramento, and also to the city of Portland, Oregon, where the M. G. West Company had installed the Stewart design of locking device identical with that which it was proposed by said company to install in Oakland under its bid; but the city council, after quite a careful and exhaustive investigation, found that the Stewart locking device was unsatisfactory in both design and operation, and that it did not meet in these respects the requirements of the plans and specifications; while on the

other hand, the locking device of the Pauly Jail Building
Company did measure up to those requirements. The city
council therefore rejected the bid of the M. G. West Company,
although it was the lowest in price, and accepted the higher
bid of the Pauly Jail Building Company, whereupon this
plaintiff, as a citizen and taxpayer of the city of Oakland,
instituted this proceeding to have set aside and canceled the
award of the contract for the work to the Pauly Jail Building
Company, and the contract made in accordance therewith, and
to enjoin the other officials of the city from the payment of
any money due or to become due in the course of its execution.

The court rendered its judgment upon the trial of the cause
in favor of the defendants, and denied a motion for a new
trial, whereupon the plaintiff prosecutes this appeal.

It was not averred by the plaintiff in his pleadings, nor
sought to be proven upon the trial of the cause, that the city
council of ·Oakland, or any of the members thereof, acted
fraudulently or corruptly in making the award of the work
in question to another than the lowest bidder for such work;
but the appellant relies for his success upon this appeal upon
his construction of certain provisions of the city charter of
Oakland with respect to the award of contracts after com-
petitive bidding for public work. ·The sections of the city
charter thus relied upon by the appellant are sections 126 and
130 thereof. Section 126 is entitled "Requirements for bids,"
and after providing with much of detail for the form and
method of bidding, and for the opening and examination of
bids, goes on to declare that the city council "shall award the
contract to the lowest bidder except as otherwise in this char-
ter provided." It also provides that "The council or board,
as the case may be, may reject any and all bids, and must re-
ject the bid of any party who has been delinquent or unfaith-
ful in any former contract with the city, and all bids other
than the lowest regular bid."

Section 130 of the charter is entitled "Public Work to be
done by contract," and provides in part as follows: "In the
erection, improvement and repair of all public buildings and
works, in all streets and sewer work, and in all work in and
about streams, bays or water-fronts, or in or about embank-
ments or other works for protection against overflow or ero-
sion, and in furnishing any supplies and material for the
same, or for any other use, by the city, or in the purchasing

of any supplies to be used by the city, when the expenditure required for the same exceeds the sum of $500, it shall be done by contract, and shall be let to the lowest responsible bidder after advertising for five consecutive days in the official newspaper for sealed proposals for the work contemplated or supplies to be furnished.''

It is the contention of the appellant that these two sections of the city charter of Oakland are to be read and construed together, and that when so construed the term ''lowest responsible bidder'' as used in the body of section 130 thereof, and which has reference specially to the construction and equipment of public buildings, is to be held to mean only that the lowest responsible bidder shall be the lowest bidder who has not been delinquent or unfaithful in any former contract with the city; and that otherwise, in every case of contracts awarded by competitive bidding, the council must either award the contract to the lowest bidder or must reject all bids.

We are of the opinion, however, that this is altogether too narrow and binding a construction to place upon these provisions of the Oakland city charter. There are many occasions in the experiences of municipal government when the quality of the thing to be supplied in the course of the public service depends upon conditions which differentiate bidders, and require the exercise of a sound discretion on the part of city officials in determining whether the wares or device which each individual bidder offers in the form of his own exclusive design are such as will meet the particular requirements of the intended work. In order to cover such cases it is quite usual in the provisions of city charters to find such terms as ''lowest and best bidder,'' or as ''lowest responsible bidder,'' and the like; and these phrases have been given by the courts a particular meaning, in which it must be presumed they are used by the framers of city charters in the absence of other limiting clauses. The term ''lowest responsible bidder'' has been held to mean the lowest bidder whose offer best responds in quality, fitness, and capacity to the particular requirements of the proposed work; and that where by the use of these terms the council has been invested with discretionary power as to which is the lowest responsible bidder, having regard to the quality and adaptability of the material or article to the particular requirements of its use, such discretion will not be interfered with by the courts in the absence of direct averments and

proof of fraud. (2 Dillon on Municipal Corporations, 5th ed., sec. 811, p. 1223, and cases cited.) And even when in statutes and charters the term "lowest bidder" only is employed, the courts have held that in determining whether a bid is the lowest among several others, there may be cases where the quality and ability of the thing offered—in other words, its adaptability to the purpose for which it is required—may be considered. (*Clapton* v. *Taylor*, 49 Mo. App. 117; *Cleveland Fire-Alarm Co.* v. *Metropolitan Fire Commrs.*, 55 Barb. (N. Y.) 288.) In fact, it is conceded by counsel for the appellant that if, under a fair and liberal construction of this charter the city council had discretion, in awarding the contract to the lowest responsible bidder, to consider the quality of the respective devices upon which the several bids were predicated, such discretion honestly exercised will not be interfered with. We think it evident that the city charter of Oakland is to be given such a construction, and that this is a very appropriate case for the application of the principles above set forth in determining which was the lowest responsible bidder for the furnishing of devices and material to be used in outfitting the city jail; and that in the exercise of its discretion in determining this issue the city council is not only shown not to have acted corruptly, but on the contrary is shown to have arrived at its conclusions with quite commendable circumspection and care.

It is, however, insisted by the appellant that since the plans and specifications did not call for nor require the submission of models of locking devices, nor provide for comparison of the merits of the respective devices of the several bidders, the council had no authority to make such investigation, nor to determine as to which bidder otherwise financially responsible was presenting the most suitable and practical device.

A sufficient answer to this contention is that apparently the M. G. West Company, far from objecting to these comparisons and investigations, co-operated with the city council in making them to the extent of exhibiting before that body a working model of its particular locking device, and of suggesting the names of cities where the experts of the city council might observe jails wherein the Stewart locking device of the precise pattern it proposed under its bid to install might be observed in actual operation. The M. G. West Company having thus submitted to the method adopted by the city council for de-

termining the issue before it, the appellant cannot here be held to complain that the action of that body was in that respect beyond its power.

It is also contended by appellant that it was the duty of the city council, upon determining that the M. G. West Company was not the lowest responsible bidder, to make a specific finding to that effect. Whatever the rule upon that subject may be in other jurisdictions, the question has been determined in this state adversely to the appellant's contention in the case of *Rice* v. *Board of Trustees,* 107 Cal. 398, [40 Pac. 551], wherein it was discussed and decided that it was not necessary for a municipal board in making a record of its action in the rejection of certain bids, to also make an entry of its reason for so doing, but that the real reason for its action might be shown upon the trial of the case involving the validity and integrity of the action of the board.

Judgment and order affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 24, 1916.