[Civ. No. 4034.   Fourth Dist.   Oct. 14, 1949.]

IVER W. SWANSON, Petitioner, v. A. L. HILDERBRAND, as City Finance Commissioner, etc., et al., Respondents.

Gilbert L. Jones, Daniel S. Lane, Roy A. Weaver and Richard B. Daley for Petitioner.

C. M. Ozias, City Attorney (Fresno), Thompson & Thompson and James D. Garibaldi for Respondents.

GRIFFIN, J.—Petitioner represents by his verified petition, and the undisputed facts show, that the respondent city of Fresno, by and through its commissioners and in compliance with section 56 of its charter, and after proceedings duly taken, advertised for bids for the construction of Section One,

Jensen Avenue Collector Sewer, and pursuant to the advertisement for bids, submitted to the bidders plans and specifications, bid forms, and instructions which, among other things, contained the following: ''. . . Proposals will be opened and read publicly at the time and place indicated in the 'invitation for bids.' Bidders or their authorized agents are invited to be present . ₇ .''

The bid schedule separately designated 29 different unit items on which bid prices were to be separately stated. Then followed a place for the total of all these separate unit bid prices. Following the bid schedule is a statement: ''Above amounts given in the above bid schedule will be subject to verification by the owner. In case of *variation between the unit price bid and totals shown above, the unit price will be considered his bid*''; that the bidder will ''accept as full payment therefor the unit prices named in the bid schedule forming a part hereof.'' This was signed by petitioner.

On April 28, 1949, the city commission, according to its minutes, proceeded to publicly open and examine the bids of approximately 12 different bidders whose bids were submitted on like forms and each separately itemized the unit bids. According to the minutes of May 19, the city clerk, at the time of the opening of the bids, asked if the unit prices should be read in addition to the total amount of the bid indicated and that no protest was registered against reading only the bid totals. All bids were then read according to the grand total indicated, without regard to the individual unit totals. According to the grand totals, as read, Steve P. Rados, Inc., had a low bid of $497,160.20, and the grand total of petitioner's bid indicated $591,799.64. Thereafter all bids were referred to the Public Works Department for checking and report. After checking by that department it was discovered that a correct addition of petitioner's bid, according to unit price bid, was $491,799.60, and that there was an error in addition of the unit bid items of $100,000, which corrected figures resulted in making petitioner's bid lowest, according to the unit price indicated.

The city commission then, on May 12, made a correction in its minutes of April 28, indicating that the commission ''proceeded to publicly open, examine and declare . . .'' all the bids above mentioned.

On May 12, the clerk read a protest from Steve P. Rados, Inc., against awarding the contract to petitioner because of the

illegality of the proceedings. This protest was referred to the city attorney for his legal opinion and on May 19, he rendered his opinion that the bid of petitioner in the corrected amount was the "lowest and best bid submitted" and was legal in form and recommended acceptance of it and rejection of all others. On roll call it was so ordered by the commission. Finance Commissioner Hilderbrand voted "no" and indicated his affirmative vote might affect his official bond. Under the city charter, section 58, payment of claims against the city are made by warrants drawn on the city treasurer by the commissioner of finance.

On June 23, the contract to complete the work was authorized and as signed recited that the city commission found petitioner's bid was the "lowest and best bid and proposal" and that petitioner agreed to perform the work in accordance with the "following unit prices bid" and the commission agreed to pay "the unit prices for the work performed." On September 29th, at the instance of Commissioner Hilderbrand, the minutes of April 28 and May 19, were corrected to show that the clerk read the total amount of the petitioner's bid as $591,-799.64, and that the later checking and verification of totals and extensions, by the Public Works Department, showed an error in addition and extension as indicated, making the true bid $491,799.60. The clerk was directed to make the correction accordingly.

Petitioner entered into the performance of the work and filed a progress estimate of $3,597.75, which report was, on September 15, approved by the commission and the respondent, commissioner of finance, was authorized and directed to pay that amount to petitioner. The finance commissioner refused to make such payment for the reasons stated.

In its return the respondent, city of Fresno, admits the allegations of the petition and after reciting the undisputed facts above mentioned, alleges that the construction of the sewer and the performance of the contract are matters of great public and general interest to the people of Fresno; that a termination of the contract would result in a great loss and expense to it and delay in the construction of the work, and that inability of petitioner to perform by reason of not being able to receive the progress payments when due, would affect the completion of the contract and impair the health and welfare of the inhabitants of the city, and it asks that the writ be granted as prayed.

Commissioner Hilderbrand, in answer to the petition, denies the regularity of the award of the contract and denies that petitioner was the lowest bidder. He concedes that mandamus is a proper remedy in this action to test the question presented. He contends that since the instructions to bidders recited that "proposals will be opened and read publicly" and that since only the total bid was read, and that since the lowest total bidder left the commissioners' room believing that he was the lowest responsible bidder, it was a matter of considerable consternation to him to later read that another bidder had been awarded the bid and contract. He stresses the fact that he does not charge any fraud, actual or constructive, on the part of anyone, and especially alleges that what was done in every instance was done in good faith. He, however, claims that to preserve "fair play" all bids received should have been rejected and the project readvertised for bids. He frankly states that no cases have been found which would be helpful to this court in deciding the matter.

Section 56 of the charter of the city of Fresno, with respect to public works contracts, provides in part that contracts in excess of $1,000 should be awarded to the "lowest responsible bidder." The invitation for bids recited: "The City Commission reserves the right to reject any and/or all bids, or award the contract in any manner it considers that the best interests of the city will be served." Such a municipality is not necessarily obligated to award such a contract to the lowest bidder, merely because he is the lowest bidder.

In *West* v. *Oakland*, 30 Cal.App. 556 [159 P. 202], it was held (quoting from the syllabus) that "The term 'lowest responsible bidder' means the lowest bidder whose offer best responds in quality, fitness, and capacity to the particular requirements of the proposed work; and, where by the use of these terms the council has been invested with discretionary powers as to which is the lowest responsible bidder, having regard to the quality and adaptability of the material or article to the particular requirements of its use, such discretion will not be interfered with by the courts in the absence of direct averments and proof of fraud."

There is no affirmative showing by respondents that any of the bids rejected were submitted by the lowest responsible bidder. However, the undisputed facts clearly indicate, as admitted, that no fraud was practiced in the reception or awarding of the bids; that the error was but an erroneous addition or calculation of certain specified and designated

totals of unit prices which were set forth in the bid as called for and that all of these bids were and remained subject to check and report by the Department of Public Works. Therefore, when the claimed lowest bidder left the commissioners' room he was not legally entitled to believe that the contract must be awarded to him but the determination of that question remained with the city commission to be later decided, in its broad discretion, after receiving the report of the department of public works. The proposal and form of bids indicate that the contract was to be let and paid according to unit price bids. These unit price bids were separately stated. The mere erroneous addition of those totals in no way affected the legality of the proceedings in accepting petitioner's separate unit bid and awarding the contract accordingly.

Since the city commission has found that the work has been done in accordance with the progress report and the money is due and has been ordered paid, and since there is no contention that funds are not available for this purpose, petitioner is entitled to a writ of mandate directing respondents to pay said claim in the sum of $3,597.75.

Let the writ issue accordingly.

Barnard, P. J., concurred.