248 So.2d 121

Howard L. WHITE, Jr.

v.

McDONALD FORD TRACTOR COMPANY, Inc.

3 Div. 478.

Supreme Court of Alabama.

May 6, 1971.

Hill, Hill, Stovall, Carter & Franco and Robert C. Black, Montgomery, for appellant.

J. Paul Lowery and James D. Straiton, Montgomery, for appellee.

Herman H. Hamilton, Jr., Champ Lyons, Jr., Montgomery, James R. Solomon, Jr., amici curiae.

MADDOX, Justice.

The question presented by this appeal requires an interpretation of Alabama's Competitive Bid Law.

On October 19, 1970, the Division of Purchases and Stores of the Department of Finance issued an invitation to bid for sixty-five low center of gravity turf tractors with sleeve-type engines to be used

by the Alabama Highway Department for mowing grass and brush from highway right-of-ways. The invitations, with specifications, were sent to 278 prospective bidders. Ten responses were received, including the bid by McDonald Ford Tractor Company, Inc., the appellee here. The bids were opened on October 29, 1970 and all parties admit that McDonald submitted the lowest bid of those responding. Five of the bidders, including McDonald, submitted bids on tractors which did not have sleeve-type engines and did not meet other specifications and were determined by State officials not to be suitable for the needs and purposes for which the tractors were required. Five bidders were determined to meet specifications, needs and purposes and upon recommendation of Highway Department personnel, concurred in by the State Purchasing Agent, Howard L. White, Jr., (Appellant) and Finance Director, Robert B. Ingram, the award of the contract was made to Booker Tractor Company, which had submitted the lowest bid of the five qualifying and conforming bids. McDonald had submitted the lowest bid of what state officials determined to be non-qualifying and non-conforming bids. Since the award was not made to the lowest bidder, reasons for the award were entered in the bid record.[1] Booker ordered the tractors, delivered them to the State, but has not been paid therefor.

On December 23, 1970, McDonald filed its petition for injunctive relief in the Circuit Court of Montgomery County against Albert P. Brewer, Robert B. Ingram, Marion H. Wilkins, and Howard L. White, Jr.[2]

Booker Tractor Company, to whom the award was made, was not made a party.

A motion for a temporary restraining order was presented to Circuit Judge Richard P. Emmet on December 28, 1970, and on December 28, 1970, Judge Emmet ordered a hearing on the matter for December 31, 1970.

The cause was heard orally by the court and on January 8, 1971, Judge Emmet entered a decree in which he found that there was "no evidence of any impropriety whatsoever on the part of any state officials; elected, appointed or merit." He also found "no evidence of untruthfulness upon the part of any official's testimony."

Much of the testimony centered around the relative merits of the Massey-Ferguson tractor bid by Booker and a Ford tractor bid by McDonald. Unquestionably, the record shows that State Highway Department employees who initiated the requests for the sixty-five tractors preferred the Massey-Ferguson tractor. In fact, it is admitted that the specifications sent with the invitations to bid were drawn around the Massey-Ferguson turf tractor, but only after the division engineers of the Highway Department agreed that this type tractor was best suited for the purposes for which the tractors were required. The trial court, although finding "no evidence of any impropriety on the part of any

1. Highway Director Marion H. Wilkins wrote Finance Director Ingram that the equipment bid by McDonald did not meet specifications on engine, transmission, parking brakes, clutch size, hydraulic system pump, tire size and weight. He also noted that the Ford tractor had a higher center of gravity than the equipment specified. The second, fourth and fifth lowest bidders each submitted a Ford tractor of the same type as had McDonald but had quoted a higher price. The Highway Department determined each to fail to meet specifications as had McDonald's. The third lowest bid was on a John Deere tractor which Wilkins stated failed to meet specifications on engine, transmission, parking brake, clutch size and stage, hydraulic system pump, tire size and weight. The Highway Department submitted a detailed analysis of the differences between the requisition specifications and the descriptive literature specifications submitted by the four Ford dealers and the John Deere dealer.

2. Each respondent was sued in his individual capacity, but appellant during oral argument stated he would not seriously argue this pleading defect in order to get a decision on the merits.

state official; elected, appointed or merit", nevertheless restrained purchasing agent White from proceeding further with the bid. The justification for such relief, if appropriate, must come from the trial court's finding and conclusion as follows:

"The intent, spirit and language of the Competitive Bid Law certainly discourages these admitted specially drawn specifications. This is, to this Court, self-evident. A competitive bid to be "competitive" must be an open bid. If the specifications are so drawn as to allow only one item to meet the specifications, then a mockery is made of the law. Practically all products have competitors. If the specifications are so drawn as to eliminate most of the competitors and to leave in only a select few, the competitive aspect is also eliminated.

\*    \*    \*    \*    \*    \*

"The Court finds that the item offered by the Petitioner here substantially meets or exceeds the relevant specifications and therefore is a qualified bid.

"The Court observes the fact that these practices might well have existed before. It might even be that in previous instances the petitioner benefited. These facts, however, do not justify the continuance of such a system. Indeed, such prior existance is all the more reason to bring about a discontinuance."

Therefore, as we view this appeal, there is one question involved:

"Under Alabama's Competitive Bid Law, can specifications be drawn to fit a particular article or piece of equipment which has been determined to be suitable for the needs and purposes required prior to the time the equipment is requisitioned?"

The question presented is not a simple one. The appellant says that our Competitive Bid Law authorizes the drawing of specifications around a piece of equipment such as the Massey-Ferguson tractor in this case, especially since it was shown that the other bids were considered and

that the bid accepted was the "lowest responsible bid." McDonald (Appellee) stoutly denies that our law so provides and contends that when specifications are so framed, free and full competition is precluded and the award made to Booker is void even though the state officials were found not to be guilty of any impropriety.

To answer the question, we must look at our Competitive Bid Law, especially Section 1 of Act No. 870, Acts of Alabama, 1961, p. 1365, which amends Section 9 of Act No. 343, approved August 20, 1957, (Title 55, § 502, Code of Alabama 1940, Recompiled 1958), and provides as follows:

"Section 9. When purchases are required to be made through competitive bidding, award shall be made to the lowest responsible bidder taking into consideration the qualities of the commodities proposed to be supplied, their conformity with specifications, the purposes for which required, the terms of delivery, transportation charges, and the dates of delivery. The purchasing agent in the purchase of or contract for personal property or contractual services shall give preference, provided there is no sacrifice or loss in price or quality, to commodities produced in Alabama or sold by Alabama persons, firms, or corporations. It is provided, however, that the awarding authority may at any time within five days after the bids are opened, negotiate and award the contract to any one provided he secures a price at least five per cent (5%) under the low acceptable bid. The award of such a negotiated contract shall be subject to approval by the Director of Finance and the Governor. The awarding authority or requisitioning agency shall have the right to reject any bid if the price is deemed excessive or quality of product inferior. Each bid, with the name of the bidder, shall be entered on a record. Each record, with the successful bid indicated thereon, and with the reasons for the award if not awarded to the lowest bidder, shall, after award of the

order or contract, be open to public inspection. Contracts for the purchase of personal property or contractual services shall be let for periods not greater than one year."

All parties seem to agree that being the *lowest bidder* does not automatically entitle the bidder to the award in every instance. As a matter of fact, counsel for McDonald stated at oral argument in answer to a question from a member of the Court that if the specifications in this case had been written in *more general terms*, and had the identical bidders responded, as did respond here, then the Highway Department officials could have determined Booker to be the "lowest responsible bidder" on the ground that the Massey-Ferguson tractor would better meet their needs and no violation of the statute would have occurred. The position of McDonald on this point is not completely without merit. For instance, in this case, McDonald's bid was classified as non-qualifying and non-conforming, as were the other three Ford dealers' bids and the John Deere dealer's bid. Failure to meet *specifications* was always given as one of the reasons why the bid failed to conform. Also, Purchasing Agent White testified that specifications could be written so precise as to exclude other items, but denied that the specifications were so drawn in this instance or that the policy of the agents for the State was to draw specifications which would have this affect. In testimony:

"Q Now, you seem to be very familiar with the Competitive Bid Law, Mr. White.

"A I hope I am.

"Q Do you feel that it is a good practice to write specifications around a particular product so as to allow the State to purchase a particular product or do you feel the intent of that law is to write a general specification so as to get the best responsible product at the lowest possible price?

"A Do you want me to answer yes or no or elaborate?

"Q I would like for you to elaborate, please.

"A In all specifications you have to start with some item. In our department, in our experience, we always start with something that they know will do the job, and they know a piece of equipment whatever it might be. To begin, we state that we are using these specifications on the level of quality. It is not our intention to exclude anybody. If we were wanting to exclude people we would put turn radius, such items as center of gravity, things that nobody could actually meet, but we do have to start somewhere. Five years ago we tried to use Federal specifications exclusively or as much as we could. The Federal specifications were so outdated that we were not getting anywhere, and we were not even many times getting any bids. So, we have to use as a criteria or some level of quality some piece of equipment. The departments have historically used that for they know it will do the job that they desire to be done."

According to the Purchasing Agent, the procedures used in this instance have been followed on many occasions since the passage of the State Competitive Bid Law in 1957, and the administrative interpretation placed on the law by the department charged with its operation over a period of time has some weight in determining the rightness of that interpretation. See Haden v. McCarty, 275 Ala. 76, 152 So. 2d 141 (1963). Without question, the legislature intended to require that competitive bidding be employed in the purchase by the State of equipment such as the turf tractors here. However, the legislature did not direct that the award must be made to the *lowest bidder,* but to the *lowest responsible bidder,* and specifically provided that in making the award to the *lowest responsible bidder* consideration could be given to the quality of the commodity

proposed to be supplied, their conformity to specifications,[3] the purposes for which required, the terms of delivery, transportation charges, and the dates of delivery. The Competitive Bid Law specifically provides that if the award is not made to the lowest bidder, however, that the reasons must be stated why the award was not made to the lowest bidder and these records must be open to public inspection. Reasons for making the award to Booker were made a part of the record in this case in conformity with the law.

The practice of the purchasing division of using a piece of quality equipment as the criteria for the specifications, if the specifications were drawn *too specific*, could result in excluding all other makes or models of similar equipment, and if the specifications were intentionally drawn so as to exclude others in order to purchase from a favored bidder because of some bad or improper motive, on the part of State officials, then the practice could not be condoned. However, the trial court specifically found in this proceeding that there was no impropriety on the part of any State official and that each testified *truthfully;* therefore, in light of these findings and conclusions the only question remaining was the authority of the Purchasing Department to use manufacturer's specifications in his invitation to bid as was done in this case. In discussing this question we specifically do not wish to be understood as sanctioning every practice which might be used in writing "specifications", but we find no violation of State law by the Purchasing Agent in this instance. In the invitation to bid, which was attached as an exhibit to McDonald's petition in the trial court, the following clauses appear:

"NOTE: All bidders to send descriptive literature, manufacturer's specifica-

tions, along with any supplemental additional specifications necessary to compare the item of equipment bid on with the requirements set forth in the bid forms."

\*     \*     \*     \*     \*     \*

"Brand names, catalog numbers, etc., are used to indicate levels of quality. If you are unable to furnish an item as specified and desire to offer a substitute, give full description of the item. Any attachment hereto is made and becomes a part of this inquiry and must be signed by bidder. No errors will be corrected after the bids are opened. No prices shall include State or Federal Excise Taxes. Tax exemption certificates furnished upon request. State reserves right to accept or reject all bids or any portion thereof."

These clauses on the invitation to bid form sent to all prospective bidders from the Purchasing Agent would seem to indicate to these bidders the "level of quality" desired, and that a bidder who wanted to offer comparable or better equipment should send this manufacturer's specifications to allow for such comparison. While the use of "specifications" of a particular brand of equipment might have some chilling effect upon competitors who do not deal in the specific product, the invitation to bid form specifies that brand names and catalog numbers are used only to indicate a "level of quality". The bid form does not encourage prospective bidders to submit bids on similar or comparable equipment, but on the other hand, it does not limit the amount of material which a prospective bidder might submit to support his claim and to persuade the State officials that he could furnish comparable or better equipment at a lower price. As a matter of fact, McDonald not only sent his literature which described in detail the merits of his Ford

---

3. The purchasing agent is required by law to develop standard specifications for all property required by the State or any department thereof. Title 55, § 108, Code 1940. "Specification" has been de-fined as the act or process of identifying or making specific through the supplying of particularizing detail. Webster's Third New International Dictionary (Unabridged).

tractor, but he, his counsel, or a representative from Ford, talked to all the State officials involved with the purchase by the State of the sixty-five turf tractors. The State officials were not convinced apparently that McDonald's tractor was best suited for their purposes and were not persuaded sufficiently by his presentation to award the contract to him.

We have found no opinion which construes the provisions of the State Competitive Bid Law, but this Court has previously had occasion to interpret the meaning of the term "lowest responsible bidder" under a similar fact situation. In Mitchell, et al. v. Walden Motor Co., 235 Ala. 34, 177 So. 151 (1937), the question presented was whether county officials could buy a Chevrolet truck at a higher price when a bid for a Ford truck was lower. No bad faith was charged but the low bidder claimed that the Competitive Bid Law required that the low bid be accepted. This Court said:

" * * * That the notice of purchase was posted and published the required length of time and by registered mail forwarded to three dealers in such material, as provided by the amended act, appears not to be controverted. And that the substance of the notice likewise meets the act's requirements we think quite clear. It called for sealed bids on 'two one and one-half ton trucks, short wheel base, chasis with cab, with dual rear wheels, equipped with 30x5–8 ply tires on rear and 600–20 balloon tires on front.' Clearly, no provision of the act demanded that the notice name the manufacturer of the truck desired to be purchased as complainants argue. This the commissioners may well determine after receiving bids on various makes of trucks. In the instant case, the road supervisor by his affidavit discloses he favored the Chevrolet over the Ford, and gives his reasons as economy in operation and durability of service. The commissioners evidently deferred to his judgment in the matter, and purchased the Chevrolet trucks at a cost of $179.50 more than the bid of the Ford dealer, one of these complainants, after first eliminating from consideration the bids of the Dodge and other dealers in trucks.

"Complainant Walden Motor Company was the Ford dealer offering the lowest bid, and it is insisted the statute was violated for the reason that its bid was not accepted and the Chevrolet bought for a higher price. To accept this contention would lead also to the conclusion that in advertising for bids the make of manufacture must be given and the purchase confined thereto, a theory which we have repudiated as not within any requirements of the act. In determining who is the lowest responsible bidder, the proper authorities may take into consideration the quality of the materials as well as their adaptability to the particular use required. 44 Corpus Juris 342. A very apt illustration is found in West v. City of Oakland, 30 Cal.App. 556, 159 P. 202, where was involved the purchase of a locking device for the jail; the court holding that: 'The honest exercise of discretion of a city council, in considering the adaptability to the use required of goods offered, in determining who is the lowest responsible bidder under a charter calling for award of public works contract to such bidder, is not reviewable.'

"So far as here appears, there was such honest exercise of discretion in the instant case. There is no charge of bad faith. The county authorities merely preferred the one make of truck over the other, and were willing to pay the difference as they viewed it in the exercise of their honest judgment. Clearly, in the exercise of such discretion, the courts cannot interfere.

"The holding of this court in Inge v. Board of Public Works, 135 Ala. 187, 33 So. 678, 681, 93 Am.St.Rep. 20, was to like effect, wherein it was said that, 'in the absence of fraud or gross abuse, the courts will not interfere with the exercise of discretion by administrative boards or

officers in their determination of who is the lowest responsible bidder.' That authority is further to the effect that where it is charged the county authorities in violation of the statute did not let the contract to the lowest bidder, no presumption is to be indulged in the matter of exercise of their discretion. It then becomes defensive matter, just as in the instant case defendants, by their answer and affidavit of the road supervisor (all of which were properly considered in connection with the bill's averments on the motion to dissolve the temporary injunction), disclosed that in their judgment the lower bid was not for the same manufactured truck, but for a different make, and their preference for the one over the other, and reasons therefor.

"Under these circumstances, therefore, no fraud or improper conduct appearing, a court of equity should not interfere with the bona fide exercise of the judgment of the county authorities."

Appellee McDonald relies strongly on this Court's decision in Poyner v. Whiddon, 234 Ala. 168, 174 So. 507 (1937), and Diamond v. City of Mankato, 89 Minn. 48, 93 N.W. 911 (1903), to support its contention that "specifications" drawn around a particular product are violative of the intent and purpose of the Bid Law and therefore illegal.

The main thrust of appellee's argument to support the judgment of the trial court is that if the specifications are so framed as to preclude free and full competition, it does not matter if there are secret understandings or that State officials acted corruptly in the premises. In other words, appellee contends that the admission by the State that the Massey-Ferguson turf tractor was used to write the specifications is sufficient in and of itself to void the contract without reference to the intent with which the act was done. We cannot agree that our legislature intended such a result. The wording of the statute itself follows very closely some of the language used by this Court in the *Walden Motor Co.* case,

supra, wherein this Court said that in determining who is the lowest responsible bidder the proper authorities may take into consideration the quality of the materials as well as their adaptability to the particular use required.

Because of appellee's insistence on Poyner v. Whiddon, supra, we have examined the original record in that appeal, involving a competitive bid law applicable to Houston County. There, the county had properly advertised for bids on a piece of road machinery described in the advertisement as "one gasoline motor driven shovel with three-eighths cubic yards dipper, not less than three-quarters swing; length of boom not less than fifteen feet six inches; length of dipper stick not less than nine feet six inches; mounted on crawler-type track."

Seven responses were made to the advertisement for bids on the road machinery and the majority of the Board of Commissioners awarded the contract to the highest bidder, Austin Western Road Machinery Company. Young and Vann Supply Company of Birmingham was alleged in the bill to be the lowest responsible bidder for supplying the road machinery and the bill alleged that the road machinery bid by Young and Vann was *approved and recommended by the county road foreman.* An examination of the original record indicates that the bids submitted by Austin Western Road Machinery Company did not conform to the specifications which were set out in the newspaper advertisement for bids, in that the machinery offered by Austin Western had a boom which was only fifteen feet in length and the specifications called for a boom of not less than fifteen feet six inches. In Poyner v. Whiddon, supra, this court said:

"* * * The averments of the bill show that the contract in question was made in violation of said section 13; that the contract was let to the highest, not the lowest responsible bidder; that the bid accepted and approved was up-

ward of $1,800, more than the bid of said lowest bidder.

"If this is true, and on demurrer and motion to dissolve for *want of equity* in the bill the averments are taken as true, said contract is void, and the county authorities were not warranted in paying public funds on the basis thereof, or issuing negotiable warrants pursuant thereto.

"It was the right and duty of the county to submit in its published bids the specifications for the article which it desired to purchase, and the bidder to qualify must meet said specifications. The county was under no obligation, and under the statute the county authorities had no authority, to modify the specifications to suit a single bidder. Carson Cadillac Corporation v. City of Birmingham et al., 232 Ala. 312, 167 So. 794. Such course would not only destroy the purpose of the statute, but would open the door to fraud. No doubt, it was the legislative purpose in prescribing said restrictions on the county authorities to avoid such results."

The language in Poyner v. Whiddon, supra, to the effect that the county officials had no authority to modify the specifications to suit a single bidder would seem to indicate that once specifications are drawn for a particular piece of equipment, the awarding authority cannot then modify the specifications. Viewed in this perspective, Poyner v. Whiddon would not support the position taken by McDonald Ford in this matter. In Carson Cadillac Corporation v. City of Birmingham, 232 Ala. 312, 167 So. 794 (1936), cited approvingly in Poyner v. Whiddon, the Carson Corporation brought suit to compel the City of Birmingham to modify or change its specifications for water pipe couplings, claiming that if the specifications were allowed to stand, only one company could successfully bid and it would be prevented from bidding, in effect, because its product would not meet the specifications drawn, but would do the job required as well or better than the pipe joints specified—Carson's contention there being like McDonald's here. This Court held:

"* * * From the averments of the bill, it is apparent that the appellant is not as much concerned about the method the city has adopted in obtaining the materials for such construction, as it is that it is not in a situation to submit prices or bids for its production, because such production does not meet the requirements of the specifications adopted by the Engineering Commission, and therefore it seeks to compel the commission to modify its specifications so that complainant may submit bids or prices for the sale of its bolted joint couplings for the steel pipes, ranging from 48 to 60 inches in diameter, on the theory that appellant's coupling is the equal or superior of any such coupling obtainable.

"To grant such relief would be to substitute the judgment of the court and its process for the judgment and discretion of the Engineering Commission as to technical matters within the field of engineering.

"It is well-settled that courts of equity, in the absence of fraud or gross abuse, will not interfere with the exercise of discretion by administrative boards in the determination of the necessity and requirements of public accomplishment, much less control the judgment of such boards in respect to matters within the technical field of their duties and powers.

"The averments of the bill fall far short of showing such fraud or gross abuse, or supporting the pleader's conclusion that the act of said board 'is unwarranted, illegal and contrary to law * * * a discrimination against the complainant and unjustifiable, interferes with its privileges and immunities which are protected by the Constitution of the United States.' Hays et al. v. Ahlrichs et al., 115 Ala. 239, 22 So. 465; Inge et

al. v. Board of Public Works of Mobile, 135 Ala. 187, 33 So. 678, 93 Am.St.Rep. 20."

In an amicus curiae brief filed in this cause, Governor George C. Wallace and Finance Director Taylor Hardin state that they feel that the Competitive Bid Law is clear and unambiguous and that the purchasing procedures adopted and used by the State since the enactment of the bid law are in complete conformity with its requirements. They further state that the temporary injunction issued by the lower court in this cause has had the effect of disrupting the purchasing of services, equipment and supplies by the State.

We think that State authorities should have discretion in determining who is the lowest responsible bidder. This discretion should not be interfered with by any court unless it is exercised arbitrarily or capriciously, or unless it is based upon a misconception of the law or upon ignorance through lack of inquiry or in violation of law or is the result of improper influence. In reaching the decision which we reach in this case, we do not mean to imply that this Court or some other court would not have the authority to declare a contract as being void because the "specifications" were written in such a manner that full and fair competition were excluded. It is fair to say that the legislative intent in passing the Competitive Bid Law was to get the best quality equipment at the lowest possible price, and the executive authorities should carry out this intent of the legislature. These officials must have discretion, not an unbridled discretion, but one exercised within the bounds we have tried to delineate in this opinion. The single most important requirement of the Competitive Bid Law is the good faith of the officials charged in executing the requirements of the law. A bad motive. fraud or a gross abuse of discretion will vitiate an award whether made with specifications which are quite general or very precise. The

trial court found that no bad faith, improper motive, fraud or gross abuse of discretion was present here; hence, we think the court was without authority to interfere with the judgment and discretion of the State officials in determining that Booker was the "lowest responsible bidder" in this instance.

The temporary restraining order was improvidently issued and the judgment of the trial court is due to be reversed and rendered.

Having reached the decision we have in this appeal, we consider it unnecessary to pass on the petition for certiorari filed by Booker Tractor Company to bring up the record of the proceedings wherein Booker sought to intervene as a party after notice of appeal was filed by White in the trial court. In reaching the merits, we have intentionally not discussed the point that Booker, who was awarded the contract which the lower court declared illegal, was not made a party to the proceeding.

Reversed and rendered.

HEFLIN, C. J., and MERRILL, HARWOOD and McCALL, JJ., concur.