This case arose out of the Mobile Airport Authority's awarding a contract to construct a new terminal building at Bates Airport in Mobile to Dunn Construction Company, Inc., whose bid was $551,065.25 lower than the bid of J.F. Pate Contractors. Pate brought an action against the Authority and its executive director, seeking an injunction against the awarding of the contract to Dunn and an order requiring the Authority to award the contract to Pate. The trial court granted Dunn's motion to intervene.
The trial court heard ore tenus testimony from eleven witnesses and received into evidence thirty-two exhibits, many of which were voluminous. In its order it found:
 "[T]he Mobile Airport Authority, and particularly the individual Board members of that body, have at all times acted in good faith and have faithfully discharged their duties to the public. Their action in awarding the contract to the defendant, Dunn Construction Company, is evidence in and of itself which demonstrates that the Board members had the public interest first and foremost in their minds in trying to save over five hundred thousand dollars ($500,000) of public money."
This was a Department of Transportation (DOT) assisted contract, and there were certain Minority Business Enterprise (MBE) obligations. The specifications set a goal of 13.5% participation for business owned and operated by minorities, with the percentage to be measured on the basis of the total dollar value of the contract. Pate's bid listed MBE subcontract participation of 14.03%. Dunn's bid listed MBE subcontract participation of 7.67%.
Section 150.06 of the contract expressly stated that "meeting MBE subcontract goals or making a good faith effort to meet *Page 420 
such goals are conditions to being awarded this DOT assisted contract." In Section 150.03, captioned "MBE OBLIGATION," it is stated that "all contractors shall take necessary and reasonable steps in accordance with 49 CFR Part 23 to ensure that minority business enterprises have the maximum opportunity to compete for and perform contracts." In Section 150.10, the following statement appears:
 "If the contractor fails to meet the MBE subcontract goals established in Paragraph 150.07 above [namely the 13.5%] the following information must be submitted prior to contract award to assist the owner in evaluating the efforts of the contractor toward meeting MBE goals."
The specifications then describe the kind of information to be submitted.
The MBE specifications require the bidding contractor to sign a "Certificate of Compliance" by which the contractor certifies that it has "made an effort to include MBE contractors outlined in paragraph 150.10."
In summary, many of the provisions of the MBE specifications stressed that MBE compliance could occur by means of good faith efforts, and these provisions were given special prominence because they were required to be incorporated into the bids.
At the time the bids were submitted, both Pate's and Dunn's MBE participation percentage was only an estimate, since in the construction business no prime contractor actually enters into subcontracts until it is awarded the prime contract; otherwise it could be stuck with binding subcontracts which it could not fulfill. After the bidding, Dunn submitted letters dated October 5 and 12 in order to show compliance with both the law and the specifications requiring that it make good faith efforts to meet the minority business goals. The minority business consultant hired by the Authority to consult with and advise the Authority on minority business compliance reported to the Authority "that Dunn had shown a good faith effort in trying to get minority participation" and that Dunn's MBE program was better than Pate's, since Dunn's list had much broader representation of minority businesses throughout the program.
The Federal Aviation Administration, which administers the MBE program, which this case is all about, approved Dunn's compliance with the MBE requirements and the award of the contract to Dunn.
Before the Authority awarded the contract to Dunn, the Authority polled the various expert consultants, in the presence of Pate's counsel, on their views, and each of the following consultants expressed his view that the contract must be awarded to Dunn, not Pate: (1) Keith King, president and chief executive officer of David Volkert Associates, the architectural firm which wrote the specifications; (2) Ian Gaston, legal counsel, who wrote a legal opinion and stated that if the Authority were to be sued by either Dunn or Pate, it could best defend awarding the contract to Dunn and should do so; (3) Le Baron Myricks of Young, Robinson Associates, who stated that the FAA approved the award to Dunn, that Dunn had shown good faith efforts, and that Dunn's MBE program was better than Pate's; and (4) Clark Sharpe of the Federal Aviation Administration.
The Authority then unanimously voted to award the contract to Dunn, the low bidder by a half million dollars.
Pate then filed a complaint with the FAA, which determined that Pate's allegations did not state a claim for violation of federal law. Pate then filed this suit.
 Issues
In this appeal, Pate discusses four issues:
1. Whether the Alabama Competitive Bid Law, § 41-16-50 et seq., Code 1975, applies to the contract in question.
2. Whether "good faith" is the appropriate standard of review for the Authority's decision to award the contract in question to Dunn based upon its amended bid. *Page 421 
3. Whether the Mobile Airport Authority's decision to (1) allow Dunn to amend its bid after the bids had been opened and (2) award the contract in question to Dunn violated the law of competitive bidding.
4. Whether the Authority's decision to (1) allow Dunn to amend its bid after the bids had been opened and (2) award the contract in question to Dunn were contrary to the contract specifications.
 Discussion
1. The Alabama Competitive Bid Law does not apply to the contract in question because the Authority is exempt from that law under § 4-3-60, Code 1975.
2. Even so, the trial court, hearing ore tenus testimony, found that the Authority exercised good faith, which is the single most important requirement of the Competitive Bid Law. In White v. McDonald Ford Tractor Company, 287 Ala. 77,248 So.2d 121 (1971), this Court wrote:
 "It is fair to say that the legislative intent in passing the Competitive Bid Law was to get the best quality equipment at the lowest possible price, and the executive authority should carry out this intent of the legislature. These officials must have discretion, not an unbridled discretion, but one exercised within the bounds we have tried to delineate in this opinion. The single most important requirement of the Competitive Bid Law is the good faith of the officials charged in executing the requirements of the law."
We reject Pate's contention that the "good faith" standard of review has no application when the complaint is directed at the procedure by which the bids were obtained. Pate's contention is predicated upon the erroneous assumption that material changes were made in Dunn's bid after it had been received and opened and its argument that to permit such changes would be to open the door to fraud and collusion. Pate cites Griswold v. RamseyCounty, 242 Minn. 529, 65 N.W.2d 647 (1954).
The foundation for Pate's entire case is one provision in the specifications, which Pate contends requires an unyielding, unbending, procrustean 13.5% quota. The trial court found that the specifications were ambiguous in regard to the quota:
 "This Court specifically finds that the specifications are ambiguous in the sense that it is not clear whether or not the contract would be awarded to the lowest responsible bidder who actually met the Minority Business Enterprise (MBE) goals set forth in the specifications, or whether the lowest responsible bidder could show, subsequent to the bid opening, good faith efforts to meet those goals."
The trial court, in upholding the Authority's action, held that the Authority could resolve the ambiguity by adopting the latter interpretation. As facts previously set out in this opinion show, there was substantial evidence to support the trial court's judgment; and there is nothing to show that trial court's interpretation, given after it had heard ore tenus testimony from the architect who wrote the specifications, the attorney who interpreted them for the Authority, an authority on MBE compliance, and directors of the Authority, was plainly and palpably wrong. Thompson v. Hartford Accident IndemnityCo., 460 So.2d 1264 (Ala. 1984).
3. and 4. The discussion of issue 2 also disposes of issues 3 and 4. The specifications permitted the lowest possible bidder to show, subsequent to the bid opening, good faith efforts to meet the MBE goals. This is what the Authority permitted Dunn to do. There was no amendment to the bid; and the award to Dunn, the lowest bidder by more than half a million dollars, did not violate the law of competitive bidding and was not contrary to the contract specifications.
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and BEATTY, JJ., concur. *Page 422