Pursuant to Rule 18, Ala.R.Civ.P., we have consented to answer the following question, which was certified to us by the United States District Court for the Northern District of Alabama:
 "Does Alabama Code [1975], § 41-16-50(a), apply to the 're-roofing' contract contained in Exhibit A such as to permit (if not mandate) the awarding authority to award the contract to a resident bidder whose bid is not more than three percent greater than that submitted by a non-resident bidder?" *Page 1384 
The pertinent part of Exhibit A, for which bids were sought, is as follows:
"RE-ROOFING OF WILKERSON ELEMENTARY SCHOOL
"116 11th Ct., North
"Birmingham, Alabama 35204
 "1. Tear off old roof to the deck and apply built-up roof with insulation as specified. The entire building is to be roofed.
 "2. Replace all existing metal with 24 gauge galvanized metal.
 "3. Bidder is responsible for measurements of building.
 "4. Apply roofing as outlined in the attached specifications.
 "5. New roof must be equal to or better than 3P-TG by Owens-Corning Fiberglas.
 "6. New roof must have a twenty (20) year unlimited liability guaranty from the roofing materials manufacturer. (see specifications)
 "7. New roof must have a written five (5) year guaranty against faulty material or workmanship by the contractor."
Ala. Code 1975, § 41-16-50(a), in pertinent part, provides:
 "All expenditure of funds of whatever nature for labor, services or work, or for the purchase of materials, equipment, supplies or other personal property involving $3,000 or more, . . . made by or on behalf of . . . the city . . . [board] of education, . . . except as hereinafter provided, shall be made under contractual agreement entered into by free and open competitive bidding, on sealed bids, to the lowest responsible bidder; provided, that in the event a bid is received for an item of personal property to be purchased or contracted for from a person, firm or corporation deemed to be a responsible bidder, having a place of business . . . within the municipality, where the municipality or an instrumentality thereof is the awarding authority, which such bid is no more than three percent greater than the bid of the lowest responsible bidder, the awarding authority may award the contract to such resident responsible bidder."
When this Court is called upon to construe a statute, we have the duty to ascertain the legislative intent expressed in that statute. This intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained. "Where a statutory pronouncement is distinct and unequivocal, there remains no room for judicial construction and the clearly expressed intent of the legislature must be given effect." Ex parte Holladay, 466 So.2d 956, 960 (Ala. 1985).
The language "All expenditure of funds . . . for labor, services or work, or for the purchase of materials, equipment, supplies or other personal property . . . shall be made under contractual agreement . . . to the lowest responsible bidder," is distinct and unequivocal.
The invitation to bid, in the case at issue, elicits a bid from a bidder who will provide labor, services, or work in performing this re-roofing and who will furnish the equipment, material, and supplies with which to re-roof Wilkerson Elementary School, in exchange for "expenditure of funds" by the city board of education. The clear and unambiguous words of § 41-16-50(a) bring this contract within the general provisions of that statute. The parties have stipulated that Tin Man Roofing Company, Inc., was the lowest responsible bidder, and that under § 41-16-50(a) the board of education should have awarded the contract to Tin Man, a non-resident of Birmingham, unless the proviso in § 41-16-50(a) is applicable. If that proviso is applicable, the board could legally award the contract to Associated Roofing Company, a resident of Birmingham and a responsible bidder, whose bid was less than 3% higher than Tin Man's bid.
The proviso applies "in the event a bid is received foran item of personal property to be purchased or contracted for
from a person, firm or corporation."
Ala. Code 1975, § 1-1-1, provides: *Page 1385 
 "(8) PERSONAL PROPERTY. The term 'personal property' includes money, goods, chattels, things in action and evidence of debt, deeds and conveyances."
Under this definition, "goods" and "chattels" would be the only things relevant in the context of § 41-16-50(a). It is unlikely that there would be an expenditure of funds by the governmental entities listed in § 41-16-50(a) for "things in action," which have been defined as "assignable rights of action," Holt v. Stollenwerck, 174 Ala. 213, 56 So. 912 (1911); and as "[a] right to recover money or other personal property by a judicial proceeding," Black's Law Dictionary, (5th ed. 1979); or "evidence of debt," which has been defined as "[a] term applied to written instruments or securities for the payment of money, importing on their face the existence of a debt," Black's Law Dictionary; or "money"; or "deeds and conveyances."
In Black's Law Dictionary, "chattels" are defined as articles of personal property, as opposed to real property; things personal and movable, animate as well as inanimate. In AmericanHeritage Dictionary of the English Language (1969), "chattels" are defined as articles of personal, movable property.
In Black's Law Dictionary, the general definition of "goods" is: "A term of variable content and meaning. It may include every species of personal property or it may be given a very restricted meaning. Items of merchandise, supplies, raw materials, or finished goods." In American Heritage Dictionary, "goods" is defined as "[m]erchandise; wares" and "[p]ortable personal property."
The proviso of § 41-16-50(a) applies only to "an item" of movable, animate or inanimate, property; merchandise; supplies; raw materials; finished goods; and wares.
The American Heritage Dictionary defines the noun "item" as "[a] single article or unit included in a collection, enumeration, or series and specified separately." "Unit" is defined as "[a] group regarded as a distinct entity within a larger group."
[A]n item of personal property" within the proviso of §41-16-50(a) is a single specified article of movable, animate or inanimate, property, merchandise, supplies, raw materials, finished goods, or wares, or a group of such articles specified separately.
The "RE-ROOFING OF WILKERSON ELEMENTARY SCHOOL" does not fit within this definition of "an item of personal property."
The Birmingham Board of Education proposed to expend funds for the labor or work involved in tearing off the old roof. This is part of the proposed contract. This is not "an item of personal property," but labor or work, which requires that the contract be awarded to the lowest responsible bidder. The Board also proposed to expend funds for the materials, supplies, and labor or work in applying a built-up new roof on this particular building. Even if this invitation to bid wasonly for the erection of a new roof, this would not qualify as an exception to the lowest-responsible-bidder requirement, for this would be an expenditure of funds for labor or work and materials, and not just for "an item of personal property."
Likewise, a "built-up roof" is not movable property, merchandise, supplies, raw materials, finished goods (portable personal property), or wares. The "built-up roof" was to be physically annexed or affixed to realty; and, when so annexed or affixed, it would become part and parcel of the realty.Milford v. Tennessee River Pulp Paper Co., 355 So.2d 687
(Ala. 1978).
Langston v. State, 96 Ala. 44, 46, 11 So. 334, 335 (1891), set out the criteria for determining whether an item is to become part and parcel of the real estate to which it is attached:
 "(1) Actual annexation to the realty or to something appurtenant thereto [a roof is actually attached to the realty]; (2) Appropriateness to the use or purposes of that part of the realty with which it is connected [a roof is essential for the usefulness of a school building or any *Page 1386 
other structure that it may cap[1]]; (3) The intention of the party making the annexation, of making permanent attachment to the freehold. This intention of making the annexation is inferred; (a) From the nature of the articles annexed; (b) The relation of the party making the annexation; (c) The structure and mode of annexation; (d) The purposes and uses for which the annexation has been made. [The intention of the Board need not be inferred in this case, for the specifications required a 20-year unlimited liability guaranty from the roofing materials manufacturer and a 5-year guaranty against faulty material or workmanship. This satisfied this requirement.]"
Clearly, a roof, during the process of erection and after its completion, is part of the realty; and, as such, it is not "an item of personal property." This is not an expenditure of fundsonly for a specified quantity of roofing material "equal to or better than 3P-TG by Owens-Corning Fiberglas," or "24 gauge galvanized metal," or material for a lightweight concrete deck; any of those could be "an item of personal property" and the proviso would permit the board of education to purchase the item from a responsible bidder having a place of business within the municipality and whose bid was no more than three percent greater than the bid of the lowest responsible bidder. A "built-up roof" is not "an item of personal property."
The legislative intent in passing the Competitive Bid Law was for the governmental entity that came within the ambit of that law to get the best quality equipment or work at the lowest possible price. J.F. Pate Contractors v. Mobile AirportAuthority, 484 So.2d 418 (Ala. 1986); White v. McDonald FordTractor Co., 287 Ala. 77, 248 So.2d 121 (1971). We will not extend the statutory exception to this worthy goal beyond the literal wording of the exception.
The certified question is answered "No."
QUESTION ANSWERED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES and BEATTY, JJ., concur.
ADAMS and STEAGALL, JJ., dissent.
[1] A good roof has been praised at least as early as the 17th Century, for the poet Robert Herrick, in "A Thanksgiving to God for his Home" wrote:
 "Lord, Thou has given me a cell Wherein to dwell, A little house, whose humble roof Is weather proof; Under the spars of which I lie Both soft and dry."