### L. G. DeFelice and Son, Inc. *v.* Newman E. Argraves, Highway Commissioner

Superior Court      New Haven County      File No. 82631

Memorandum filed November 3, 1955.

*Sachs, Sachs & Sachs,* of New Haven, and *Lucius F. Robinson, Jr.,* of Hartford, for the plaintiff.

*John J. Bracken,* attorney general, and *Jack Rubenstein,* assistant attorney general, of Hartford, for the defendant.

HOUSE, J. With most commendable co-operation, counsel have agreed upon stipulations of fact which, with the admissions in pleadings, have substantially contributed to the expeditious presentation of this case upon the relatively narrow issue involved.

In brief the facts are these: In connection with the construction of a portion of the Connecticut Turnpike in Milford, authorized by part 4 of chapter 107 of the General Statutes (Cum. Sup. 1953, §§ 975c-990c), the defendant highway commissioner, acting under the authority of § 2229 of the General Statutes, advertised for bids. In the notice to prospective bidders the commissioner requested alternate bids, one for

construction of reinforced concrete and one for bituminous concrete pavement. In the notice, the commissioner expressly stated: "The type of pavement to be used on the project will be determined by the Commissioner after bids have been received. The determination as to the type of pavement to be constructed will be made only after all factors, including costs, have been fully investigated."

Upon the opening of the bids it was found that on alternate A, calling for reinforced concrete, a contractor, S Co., was the lowest bidder. Plaintiff also bid on this alternate. On alternate B, calling for bituminous pavement, the plaintiff was the lowest bidder. In fact, plaintiff's bid on alternate B was the lowest bid of all received.

It is stipulated that the commissioner has authority to invite alternate bids, that the plaintiff is a "responsible" bidder, that the plaintiff's bid meets the required specifications on alternate B and that his bid was in proper order and form. So was the bid of S Co. on alternate A. It is further stipulated that, depending upon varying conditions, either design of highway construction is adequate, and amongst competent engineers there is an honest difference of opinion as to which is the better, taking into account basic cost, cost of maintenance, serviceability, longevity, use, safety and all other related pertinent factors.

It is found, as a fact, that it is reasonably probable that the defendant commissioner will award the contract to S Co. on the basis of its bid on alternate A for reinforced concrete unless the plaintiff is granted the injunction which it seeks, enjoining the award of the contract to S Co. on the basis of its bid based on alternate A.

The plaintiff seeks both a temporary and a permanent injunction and, although the present hearing

was on the application for a temporary injunction, the action being returnable to the December term of court, the parties have stipulated, so far as it lies within their power, that the decision of this court on the matter of a temporary injunction will be accepted as a decision on the application for a permanent injunction also.

It thus appears that the relatively narrow issue before the court is whether or not the highway commissioner, having asked for alternate bids and having received alternate bids from all bidders, including the plaintiff, may now determine the type of pavement which he will use in the construction of the subject highway and award a contract to the lowest responsible bidder for the type of construction which he now selects. It is the claim of the plaintiff that he cannot do so but that, even though he requested alternate bids and expressly reserved the right to determine the type of construction after the opening of the bids, nevertheless he must now, under the provisions of § 2229 of the General Statutes, award the contract to the plaintiff as the lowest responsible bidder of the two alternative methods of construction. The plaintiff relies upon the provision in § 2229 of the General Statutes: "SUBMISSION OF BIDS. . . . The highway commissioner shall have the right to reject any and all bids, if, in his opinion, cause shall exist therefor; but otherwise he shall award the contract to the lowest bidder whom he shall deem responsible. . . ."

Although it appears that this question has never been judicially determined in Connecticut, the practice and principle of alternate bids has been well established throughout the country. The prevailing authority on the subject is well summarized and annotated in a note in 27 A.L.R.2d 917, entitled "Differences in character or quality of materials, articles, or work as affecting acceptance of bid for

public contract," where (§ 6, p. 932) it is stated: "Where the specifications for a public contract are open to more than one kind of materials, articles, or work, and a constitutional or legislative provision requires that the contract be let to the 'lowest responsible bidder,' or the equivalent thereof, it is generally held that the awarding officials may choose between the different kinds of materials, articles, or work offered by the bidders, and let the contract for the kind they honestly believe to be of better quality or more suitable for the intended purpose than another kind, or other kinds, offered even at lower prices." In 10 McQuillin, Municipal Corporations (3d Ed.) § 29.55, p. 317, the rule is stated: "Specifying alternative materials or work. The fact that the authorities specify different kinds of material—putting the materials, in a sense, in competition with each other—does not constitute hinderance to competition, even though the authorities cannot decide which material to use until after all the bids are presented. They may specify different kinds of asphalt for street improvements, or free or limestone flagging and artificial cement stone. So, too, they may specify brick or bituminous macadam, and may decide after all bids are received to adopt one or the other and they need not select the cheaper of the two."

To similar effect see 43 Am. Jur. 778, § 37, "Public Works and Contracts"; 3 Page, Contracts (2d Ed.) p. 3323, § 1946, and cases cited; note, 27 A.L.R. 932 et seq., especially *Trapp* v. *Newport,* 115 Ky. 840, and *L. & M. Properties Co.* v. *Burke,* 152 Ohio St. 28. In the latter case the Supreme Court of Ohio ruled upon the precise question here involved in a factual situation remarkably similar. In that case, where the specifications for construction of an airfield runway called for bids in the alternative for concrete and asphalt, the court held that the awarding officials

were authorized, under a provision requiring that the contract be let to the lowest responsible bidder, to select the lowest bid on concrete construction although it was higher than the lowest bid for asphalt construction.

It therefore appears that in those jurisdictions where the issue has been adjudicated the great weight of authority supports the proposition that the awarding official may exercise his discretion to determine after the receipt of alternative bids which alternative to select and to select the lowest responsible bidder under that alternative.

Neither the literal words of the Connecticut statute nor a consideration of its history, the purpose it is designed to serve, the policy underlying it and the mischief it was designed to remedy (see *Cassidy* v. *Tait,* 140 Conn. 156, 160; *Giammattei* v. *Egan,* 135 Conn. 666, 668) would seem to justify or require any different rule in this jurisdiction.

, The court will not interfere with the exercise of discretionary powers vested in a public official in the absence of fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power or violation of law. *State ex rel. Harrison* v. *Wilson,* 116 Conn. 36, 43; *Munson* v. *MacDonald,* 113 Conn. 651, 656; *State* v. *McCook,* 109 Conn. 621, 628; *Water Commissioners* v. *Johnson,* 86 Conn. 151, 159; 1 Williston, Contracts (Rev. Ed.) p. 75 n. 4. No such situation is claimed here, and the highway commissioner is vested with great authority and powers of discretion. See chapter 107 of the General Statutes. It should also be noted that the legislation authorizing and directing the construction of the Connecticut Turnpike is a grant of additional authority to the commissioner and expressly is not in any way a limitation upon his general authority. Cum. Sup. 1953, § 990c.

Nor will the extraordinary remedy of injunctive relief be granted except for the prevention of serious and irreparable injury. *Brainard* v. *West Hartford,* 140 Conn. 631, 634; *Point O'Woods Assn., Inc.* v. *Busher,* 117 Conn. 247, 250. "Courts will act with extreme caution where the granting of injunctive relief will result in embarrassment to the operations of government. *New London* v. *Perkins,* 87 Conn. 229, 234." *Coombs* v. *Larson,* 112 Conn. 236, 247. In this connection it is not insignificant that the legislation passed in 1953 authorizing this turnpike authorized and directed the highway commissioner to plan and construct it "forthwith" (Cum. Sup. 1953, § 976c), and there had already been judicial recognition of the pressing need for the construction of the turnpike with the declaration by *Comley, J.,* in *Rohm* v. *Hill,* 18 Conn. Sup. 258, 267, with reference to traffic on the existing highway, that "[t]he condition has reached a point where public safety and public welfare imperatively demand an immediate remedy."

In the light of what has already been considered, it is unnecessary to go further and discuss the very respectable line of authorities cited by the defendant to the effect that a bidder cannot compel the awarding of a contract to himself merely because his bid is the lowest, because such provisions are enacted for the benefit of the public and not the bidder.

The plaintiff's claim for a temporary injunction is denied.