This is an appeal by the plaintiff, International Telecommunications, Inc. (ITS), from the denial of injunctive relief which it sought against the State of Alabama, Howard White, and General Electric Corporation (GE) for an alleged violation of Code of Ala., 1975, § 41-16-20 through 32 (the Competitive Bid Law). We affirm.
The facts concern an invitation to bid on the purchase by the State of replacement radio crystals to be installed in GE radios which already were placed in State trooper automobiles. THe invitations to bid were published on December 17, 1975. These invitations specified GE parts of different serial numbers "or equal." Both GE and ITS submitted bids, however the bid of ITS used a crystal manufactured by Anderson Electronics, Inc. Because an invitation to bid is understood as a "Request for Proposal," the requisitioning agency (in this case the Department of Public Safety (DPS)) advises the Purchasing Agency whether or not the bid is acceptable. The specifications for this bid were written by Thomas Garrett, the chief radio engineer for DPS. When the bids were opened on February 13, 1976 ITS was represented by its general manager, D.C. Beatty, Jr. In a conversation with Garrett at that time, Beatty agreed to supply samples of the Anderson crystals for evaluation. They had conversed several months before the bid opening on the subject of the crystal purchase to be made, and Beatty had told Garrett that he would select a manufacturer of crystals that would equal or exceed all the specifications, including warranty.
Garrett wrote to Beatty on March 19, 1976 stating that he had received neither the crystal samples nor a warranty. In this letter Garrett specifically referred to the lifetime warranty on GE crystals. Beatty replied by letter on March 28, 1976 that the Anderson crystals had been shipped. Garrett never received them, however.
Then on June 2, 1976 Beatty wrote to Savoy Electronics, Inc., a Fort Lauderdale, Florida firm, requesting that their appropriate samples, together with a warranty statement, be sent to the State purchasing agent, Mr. White, or to Mr. Grady Smith in the purchasing office. In this letter Beatty specifically noted that the warranty was to be equal to the normal GE warranty. But when a set of Savoy crystals was received by the State purchasing office in early June, 1976, the container in which these were shipped contained a printed notice stating that Savoy crystals were warranted for one year. Garrett proceeded to evaluate the GE and Savoy crystals. Under environmental conditions which were the same for both he sprayed each with a coolant, then compared their "drift" from their set frequencies. The Savoy crystal drifted more than the GE. Garrett also contacted engineers in and out of Alabama by telephone, attempting to learn more about the Savoy crystals, but in his inquiries he found only one, Harold Champion, a radio engineer with DPS.
Champion had experience using both types of crystals in military communications and in amateur radios. His experience with Savoy crystals had been unsatisfactory while that with GE crystals had been satisfactory. He affirmed that he had discussed the Savoy crystals with Garrett in June of 1976.
The ITS bid was not accepted, but a new bid was asked. Again ITS was the lowest bidder at the opening on August 12, 1976, on this occasion offering not the Anderson crystals as before but the Savoy crystals. On August 16, 1976 ITS was notified that its bid would not be accepted. GE was found to be the lowest responsible bidder. *Page 366 
On August 19, 1976 this suit was filed. The State of Alabama was dismissed by the trial court, leaving Howard White and GE as defendants.
In substance, the plaintiff's suit claimed that the Savoy crystals were "equal" to the GE crystals and therefore as low bidder it should have been awarded the contract which, through the arbitrariness of the purchasing officials, was awarded to GE. In denying injunctive relief, the trial court held that the legal standards set out in White v. McDonald Ford TractorCompany, 287 Ala. 77, 248 So.2d 121 (1971), were controlling. It found:
 [T]hat the evidence establishes that no State official acted arbitrarily or capriciously or with abuse of discretion in determining that Defendant, General Electric Corporation was the lowest responsible bidder. Further, the Court finds that the exercise of discretion by State officials in reaching their decision was not the result of a misconception of the law or ignorance through lack of inquiry or any violation of the law or improper influence. The Court finds that these officials acted in good faith and that each testified truthfully.
Following this order the purchase from GE took place, no stay having been obtained pending appeal. The plaintiff's position on this appeal, however, is that it would be entitled to its profit from the sale even though injunctive relief has been rendered moot. That question, however, is controlled by whether or not the trial court was correct in denying relief to ITS in the first instance.
The Competitive Bid Law does not require that the lowest bid be accepted, and the plaintiff concedes this. What that statute requires is that:
 (a) When purchases are required to be made through competitive bidding, award shall be made to the lowest responsible bidder taking into consideration the qualities of the commodities proposed to be supplied, their conformity with specifications, the purposes for which required, the terms of delivery, transportation charges and the dates of delivery; provided, that the awarding authority may at any time within five days after the bids are opened negotiate and award the contract to anyone, provided he secures a price at least five percent under the low acceptable bid. The award of such a negotiated contract shall be subject to approval by the director of finance and the governor. The awarding authority or requisitioning agency shall have the right to reject any bid if the price is deemed excessive or quality of product inferior.
The requirements thereby placed upon purchasing authorities were fully explored in White v. McDonald Ford Tractor Company,287 Ala. 77, 248 So.2d 121 (1971). In response to an invitation to bid upon the purchase of tractors with sleeve-type engines and other specifications, McDonald was the low bidder. Its tractors possessed neither the proper engines nor other requirements, and the State officials determined that they were unsuitable. Upon McDonald's suit for injunctive relief it was disclosed that the specifications which accompanied the invitations to bid were drawn around a particular make of tractor, but only after State officials had agreed that the particular tractor was best suited for the purpose. Such a practice was not condemned ipso facto by this Court upon review unless it could be shown that "the specifications were intentionally drawn so as to exclude others in order to purchase from a favored bidder because of some bad or improper motive, on the part of State officials, . . ." 287 Ala. at 82,248 So.2d at 125. This Court went on to find under the facts that bidders nevertheless still were in a position to compete upon a "level of quality" established by the specifications. (That is the situation in this case, since bidders were invited to bid on specified GE parts "or equal"). The injunction suit by McDonald resulted from the failure of its representatives to convince the State's officials that its tractor was more compatible under those specifications.
Their action in awarding the sale to a higher conforming bidder under those circumstances was approved upon appeal: *Page 367 
 We think that State authorities should have discretion in determining who is the lowest responsible bidder. This discretion should not be interfered with by any court unless it is exercised arbitrarily or capriciously, or unless it is based upon a misconception of the law or upon ignorance through lack of inquiry or in violation of law or is the result of improper influence. In reaching the decision which we reach in this case, we do not mean to imply that this Court or some other court would not have the authority to declare a contract as being void because the `specifications' were written in such a manner that full and fair competition were excluded. It is fair to say that the legislative intent in passing the Competitive Bid Law was to get the best quality equipment at the lowest possible price, and the executive authorities should carry out this intent of the legislature. These officials must have discretion, not an unbridled discretion, but one exercised within the bounds we have tried to delineate in this opinion. The single most important requirement of the Competitive Bid Law is the good faith of the officials charged in executing the requirements of the law. A bad motive, fraud or a gross abuse of discretion will vitiate an award whether made with specifications which are quite general or very precise. The trial court found that no bad faith, improper motive, fraud or gross abuse of discretion was present here; hence, we think the court was without authority to interfere with the judgment and discretion of the State officials in determining that Booker was the `lowest responsible bidder' in this instance.
The gist of the plaintiff's argument on this appeal is that the standard of conduct for State officials set out in McDonald
was violated because the decision to award the sale to GE was arbitrary and capricious. It argues that the State had no procedures for testing, no testing regulations or standards, no standard sample requirements, and no basis for determining either the reasonableness or the adequacy of tests made upon products. All of this is a frontal attack upon the procedures utilized by Garrett to test the Savoy and GE crystals. It should be recalled that Garrett, chief engineer for DPS, wrote the specifications for the crystals, and it was partially upon his conclusions that the decision to reject the ITS bid was based.
The record does disclose that Garrett did not use an environmental oven in his testing, the closest found being located in Colorado. But Garrett did make a comparison of the crystals which included the sample Savoy transmitting crystal sent to him. The number of samples sent for evaluation was a matter for the bidder to decide and the record shows that Garrett tested what he was sent. Nor did the plaintiff itself or Savoy send the purchasing agents any other test data to accompany the samples and thus provide additional proof of capability. Garrett made other inquiries which revealed that Champion had some unsatisfactory experience with Savoy crystals when compared with GE crystals. Both Garrett and Champion testified to the suitability of GE crystals when compared with Savoy crystals.
Plaintiff attacks Garrett's abilities in making these decisions by characterizing him as a person with no engineering degree and little engineering training. Garrett testified to his correspondence school study in radio engineering from 1958 to 1963 and to his successfully passing an FCC written technical examination on the operation and maintenance of radios. He affirmed his knowledge of the operation of radio crystals and his ability to tell whether a crystal is operating properly. Mr. Garrett had been employed by DPS for seven and one-half years at the time of his deposition; before that he operated a two-way radio company. His position made him responsible for the operation and maintenance of all DPS communications equipment, radar, electronics and power generation. He held a first-class radio-telephone operator's license issued to him in 1963 by the FCC. He supervised eleven technicians and was frequency co-ordinator for police frequencies. In view of his training and experience it would have *Page 368 
been improper to refuse him the right to express himself as an expert on the results of his comparisons and to accord his views with some weight. Experience and practical knowledge may qualify one to make technical judgments as readily as formal education. Blakeney v. Alabama Power Co., 222 Ala. 394,133 So. 16 (1931); Alabama Power Co. v. Williams, 222 Ala. 75,130 So. 788 (1930). Garrett's expert opinion was that the GE was the most suitable and that the Savoy crystal was not equal to it.
Garrett also testified that he rejected the Savoy crystal on its warranty. He conceded that the specification did not set out the warranty on the GE parts identified, and that information outside of that part's description would have to be consulted for warranty information. But he also testified that before the bid was let he knew that GE gave a "life of the equipment" warranty on this item as part of their warranty on the radio. In fact, White and Smith, as purchasing officials, knew that GE extended a lifetime warranty on their crystals while Savoy's warranty extended over one year. As noted earlier, Beatty had been apprised of this by Garrett's letter, even if Beatty had not known of it before.
Under the requirements delineated in McDonald each case must stand upon its own bottom. Admittedly, the test conducted by Garrett was not conducted in the same manner as it might have been by either Savoy, GE, or by a professional testing laboratory. Nevertheless it would be erroneous to conclude that the test furnished no basis whatever for the negative conclusion on the operational function of the Savoy crystal, or that, considering the differences in the warranties at the time, the decision disfavoring Savoy crystals was arbitrary and capricious. Upon the record we cannot classify that decision as one made "without reason," or done "impulsively," or made "irresponsibly," Webster's Third New International Dictionary, 1971 (G. G. Merriam Co.), pp. 110, 333, 1196, or through lack of inquiry. There is not, moreover, any evidence in the record which would justify an opposite conclusion to the trial court's finding that the officials acted in good faith and testified truthfully. Because they acted in good faith from proper motives, without any showing of a gross abuse of the discretion given them by statute to identify the lowest responsible bidder, McDonald, supra, we have concluded that the order of the trial court must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.