This is an appeal by the plaintiff, Mobile Dodge, Inc., from the denial of injunctive relief which it sought against Mobile County and Treadwell Ford, Inc., for an alleged violation of Code of Ala. 1975, §§ 41-16-50 through -63 (the Competitive Bid Law). We affirm.
On September 14, 1982, the Mobile County Commission gave notice that it would receive bids per specifications on thirty-nine 1983 model police package automobiles for the Mobile County Sheriff's Department. By stipulation of the parties, this litigation involves only the 36 units that were to be delivered between January 15 and February 1, 1983. The invitations to bid contained specifications calling for, among other things, heavy-duty full length frames and front and rear coil-spring suspension systems. Both Mobile Dodge and Treadwell Ford submitted bids on the 36 units involved: Mobile Dodge submitted a bid of $289,199.89, and Treadwell Ford submitted a bid of $340,989.63. Although Mobile Dodge submitted the lowest bid of those responding, the contract was not awarded to Mobile Dodge, because it had submitted its bid on police units having frames with unibody construction and torsion bar suspension systems, and those units were determined by county officials not to be suitable for the needs and purposes for which the units were required.
Upon the recommendation of Mobile County Sheriff Thomas J. Purvis, and over the objection of Mobile Dodge, the Mobile County Commission awarded the contract to Treadwell Ford, which had submitted the lowest responsible bid, its units having met the frame and suspension requirements, and otherwise conforming to the bid specifications.
On November 15, 1982, Mobile Dodge filed its petition for injunctive relief in the Circuit Court of Mobile County against Mobile County and Treadwell Ford, seeking to enjoin Mobile County from purchasing for the Mobile County Sheriff's Department the 36 police package automobiles from Treadwell Ford.
In its complaint, Mobile Dodge alleged that it was the lowest responsible bidder; that the specifications were drawn so as to deliberately exclude Mobile Dodge as a competitor; and that Mobile County acted arbitrarily, capriciously, and in bad faith in awarding the contract to Treadwell Ford. In denying injunctive relief, the trial court, guided by the decision of this Court in *Page 58 White v. McDonald Ford Tractor Co., 287 Ala. 77, 248 So.2d 121
(1971), found:
 "[T]hat the Sheriff's Department of Mobile County engaged in a reasonable and rational process, based on their experience and the experience of others, in selecting the requirements most suitable to meet their needs.
". . . .
 ". . . The action of the Sheriff and the County in selecting the specifications found in the bid invitation did not constitute an abuse of discretion, was not illegal or contrary to the law, was not discriminatory, nor was it arbitrary, capricious or the result of bad faith."
". . . .
 ". . . [T]hat process was directed toward the selection of cars which would be durable, safe and crashworthy. . . ."
The trial court's order was entered on December 21, 1982. Since Mobile Dodge did not obtain a stay pending appeal, the purchase of the 36 police packages took place. Mobile Dodge's position on this appeal, however, is that although injunctive relief has been rendered moot it would be entitled to its profit from the sale of the 36 units.
The pertinent provisions of the competitive bid law, found in § 41-16-57 (a) and (c), provide as follows:
 "(a) When purchases are required to be made through competitive bidding, awards shall be made to the lowest responsible bidder taking into consideration the qualities of the commodities proposed to be supplied, their conformity with specifications, the purposes for which required, the terms of delivery, transportation charges and the dates of delivery.
". . . .
 "(c) The awarding authority or requisitioning agency shall have the right to reject any bid if the price is deemed excessive or quality of product inferior."
The standard of conduct to be followed by State officials when drawing specifications for products to be bid on, and when selecting the lowest responsible bidder, were set out with particularity by this Court in White v. McDonald Ford TractorCo., supra, and followed in International TelecommunicationsSystems v. State, 359 So.2d 364 (Ala. 1978). In White, the invitation to bid upon the purchase of tractors contained specifications requiring tractors with sleeve-type engines, among other things. It was admitted that the specifications were drawn around the Massey-Ferguson turf tractor after State officials had agreed that it was best suited for the required purposes. McDonald was the low bidder; however, its Ford tractors did not meet the sleeve-type engine requirement, nor certain other requirements contained in the specifications, and the State officials determined that they were unsuitable. McDonald sought an injunction when it failed to persuade State officials of the merits of the Ford tractor. Injunctive relief was denied, and on appeal this Court upheld the award of the contract to a higher conforming bidder, explaining:
 "We think that State authorities should have discretion in determining who is the lowest responsible bidder. This discretion should not be interfered with by any court unless it is exercised arbitrarily or capriciously, or unless it is based upon a misconception of the law or upon ignorance through lack of inquiry or in violation of law or is the result of improper influence. In reaching the decision which we reach in this case, we do not mean to imply that this Court or some other court would not have the authority to declare a contract as being void because the `specifications' were written in such a manner that full and fair competition were excluded. It is fair to say that the legislative intent in passing the Competitive Bid Law was to get the best quality equipment at the lowest possible price, and the executive authorities should carry out this intent of the legislature. These officials must have discretion, not an unbridled discretion, but one exercised within the bounds we have tried to delineate in this opinion. The single most important requirement of the Competitive Bid Law is the good *Page 59 
faith of the officials charged in executing the requirements of the law. A bad motive, fraud or a gross abuse of discretion will vitiate an award whether made with specifications which are quite general or very precise. The trial court found that no bad faith, improper motive, fraud or gross abuse of discretion was present here; hence, we think the court was without authority to interfere with the judgment and discretion of the State officials in determining that Booker was the `lowest responsible bidder' in this instance." 287 Ala. at 86, 248 So.2d at 129-30.
The Court further stated that "if . . . specifications were intentionally drawn so as to exclude others in order to purchase from a favored bidder because of some bad or improper motive on the part of State officials, then the practice could not be condoned." White, supra, 287 Ala. at 82,48 So.2d at 125.
Mobile Dodge contends that the Mobile County Sheriff's Department acted arbitrarily and capriciously by drawing the specifications for the police packages so specifically as to result in exclusion and disqualification of all Chrysler police packages, and further, that such exclusion of Mobile Dodge was intentional in order that the contract could be awarded to a favored bidder, Treadwell Ford. The specifications in question were developed by Lt. Rufus Harbin, of the Mobile County Sheriff's Department, together with Joe Ferrouillat, County Garage Supervisor. Both men testified that they included full-frame and coil-spring suspension system requirements in the specifications for patrol cars because, based on their experience and the experience of others, these characteristics made the vehicle safer, more crashworthy, more durable, and cheaper to maintain and repair.
The evidence of record discloses that, although the specifications were revised somewhat each year, the full-frame and coil-spring suspension requirements were added after the Sheriff's Department had had bad experiences with several 1977 Dodge Monacos: on at least three of these vehicles, the torsion bars broke on the right side. Nevertheless, the Sheriff's Department has continued to use vehicles with the unitized frame on the "civil side" and currently has several 1981 Dodge Aspens for these purposes.
At trial, Mobile Dodge adduced evidence showing that the Mobile Police Department uses as patrol cars Dodge police packages having torsion bar suspension and unitized bodies, and is satisfied with their performance. Mobile County put on evidence, however, indicating that due to the unpaved roads and rougher terrain found in the rural areas of the county, over which the Sheriff's Department patrol cars routinely travel, having sturdier frames and more flexible suspension systems on its vehicles was a necessary and often critical consideration, especially when a vehicle is wrecked or involved in a collision. Based on the experience the Sheriff's Department had with vehicles with full-frame and coil-spring suspension systems, they proved more durable, cheaper to maintain, and longer lasting, and offered more protection to the patrolmen in the event of a collision.
Furthermore, the experience of the Alabama State Highway Patrol with the unitized body was shown not to have been particularly good; twisting or wrinkling often occurred as a result of crossing highway medians, and other damage to the body would result if the vehicle had to be towed from the back. It was also shown that repairs of the unitized body, calling for straightening or welding, required special and more expensive equipment which the county garage did not own.
Most importantly, both Lt. Harbin and Joe Ferrouillat testified that it was their intent to draw the specifications only to eliminate unitized frames and torsion bar suspension systems on its patrol cars, and not to eliminate Dodge as a competitor. Nor did they favor the Ford police packages. In fact, the evidence showed these specifications would not only exclude Chrysler products, but also certain Ford vehicles and any other vehicle not having a *Page 60 
full frame and an independent coil suspension system. It was further shown that certain products made by General Motors and American Motors would not be excluded by the specifications. Therefore, it cannot be said that Ford products were preferred when the specifications were drawn. As the trial court found: "These specifications excluded all cars which did not have a full frame and which did not have coil spring suspension on all four wheels. It may be an unfortunate result that some cars are in fact excluded by this process but this does not make the process illegal." (Emphasis in original.)
Mobile Dodge further asserts that the Chrysler police package, on which it bid, is a "quality product comparable to other police packages," but that the specifications as written effectively eliminated it from the bid competition altogether. Therefore, it contends, the specifications were written in such a manner as to exclude full and fair competition, White v.McDonald Ford Tractor Co., supra; nor, it says, was Mobile Dodge given the opportunity to compete "upon a level of quality" established by the specifications, InternationalTelecommunications Systems v. State, supra. In substance, we see no distinction between the contentions made here by Mobile Dodge and those made by the complainant in the case of CarsonCadillac Corp. v. City of Birmingham, 232 Ala. 312, 167 So. 794
(1936), cited with approval in White v. McDonald Ford TractorCo., supra. In Carson, the complainants sought an injunction against the City of Birmingham and further sought to compel the city to modify or change its specifications for water pipe couplings to include the Carson joint so that it could bid on the Birmingham water supply project. Carson further alleged that its joint was "equal, if not the superior of any other bolted joint or coupling manufactured," and that it had been excluded by the specifications from bidding "either as a result of the failure or inability [of the Engineering Commission] to consider and appreciate" its product, or as a result of improper influence, and that because of all this the bid process was "unwarranted, illegal and contrary to law."232 Ala. at 315-16, 167 So. at 795-96. This Court held:
 "From the averments of the bill, it is apparent that the appellant is not as much concerned about the method the city has adopted in obtaining the materials for such construction, as it is that it is not in a situation to submit prices or bids for its production, because such production does not meet the requirements of the specifications adopted by the Engineering Commission, and therefore it seeks to compel the commission to modify its specifications so that complainant may submit bids or prices for the sale of its bolted joint couplings for the steel pipes, ranging from 48 to 60 inches in diameter, on the theory that appellant's coupling is the equal or superior of any such coupling obtainable.
 "To grant such relief would be to substitute the judgment of the court and its process for the judgment and discretion of the Engineering Commission as to technical matters within the field of engineering.
 "It is well-settled that courts of equity, in the absence of fraud or gross abuse, will not interfere with the exercise of discretion by administrative boards in the determination of the necessity and requirements of public accomplishment, much less control the judgment of such boards in respect to matters within the technical field of their duties and powers.
 "The averments of the bill fall far short of showing such fraud or gross abuse, or supporting the pleader's conclusion that the act of said board `is unwarranted, illegal and contrary to law * * * a discrimination against the complainant and unjustifiable, interferes with its privileges and immunities which are protected by the Constitution of the United States.' [Citations omitted.]" 232 Ala. at 317, 167 So. at 798-799.
While it is true that, due to the fact that all Chrysler products are manufactured with unitized bodies and torsion bar suspension systems, Mobile Dodge is effectively excluded from bidding on patrol cars for *Page 61 
the Mobile County Sheriff's Department, we cannot upon the record conclude that the specifications calling for full frames and coil spring suspension systems are unreasonable, impulsive, or irresponsible, and thus arbitrary and capricious.International Telecommunications Systems v. State, supra. Nor are we able to find any evidence in the record that would support a conclusion contrary to the trial court's finding that the county officials engaged in a reasonable and rational process in selecting the requirements most suitable to meet their needs, and acted in good faith from proper motives, without any showing of a gross abuse of their discretion in awarding the contract to Treadwell Ford. Consequently, we conclude that the order of the trial judge is due to be affirmed. It is so ordered.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.