The United States District Court for the Northern District of Alabama, the Honorable William M. Acker, Jr., presiding, has certified questions in a dispute under Alabama's competitive bid law in which a dissatisfied bidder, Ericsson GE Mobile Communications, Inc. ("EGE"), has challenged the City of Birmingham's contract with Motorola Communications 
Electronics, Inc. ("Motorola"), for a new public safety radio communications system. This Court has agreed to answer questions concerning the appropriateness of requesting alternative bids, whether this contract qualifies as a "sole source" contract (and therefore is exempt from the bid law), and the relevance of the City's outside consultant's close cooperation with Motorola.
Because the certified question procedure does not place this Court in a position of making factual findings, we set forth the following primary facts, as provided by the district court and the materials submitted by the parties, merely to provide a context within which our answers may be understood. The City of Birmingham decided to replace *Page 859 
its old public safety communications system, and on May 27, 1993, issued a request for bids for a "Digital 800 MHZ Trunked Simulcast Radio System." The request for bids included four alternatives:[1]
 "Alternative # 1 — A system compatible with APCO[2] project 25 interim standards.
 "Alternative # 2 — A system compatible with APCO 16 standards.
 "Alternative # 3 — A system compatible with present APCO 16 standards with a capability to migrate to APCO 25 standards.
 "Alternative # 4 — A Mobile Data Terminal System.
 "A vendor may bid on any or all of these Alternatives."
The APCO project 25 standards are entitled "interim" because the project 25 is an evolving system still in the development stages, with certain targets and expectations but with no final written specifications or guarantees of future performance in certain of its aspects. APCO, however, has approved the APCO 16 standards.
The two bids received were opened August 2, 1993. Motorola bid for the APCO 25 Interim Standard System under Alternative # 1, and EGE bid for the APCO 16 Standard System under Alternative # 2. The mayor and the city council were the City's decision-makers on the project. A special committee of four City employees recommended that the City accept EGE's bid as the lowest responsible bid. Floyd Dyar, the City's purchasing agent, was among those who recommended that the APCO 16 system offered by EGE be accepted. The mayor, however, decided that the City's needs would be better served by the APCO 25 Interim Standard System and recommended it to the City Council.
After obtaining advice from Alton Hambric, the City's outside consultant on the project, and upon instruction from the mayor, the City rejected both bids on October 27, 1993. The City thereafter entered into negotiations with Motorola and entered into a contract with Motorola in March 1994. The contract states on its face that it is for an APCO 25 Radio System.
EGE filed a complaint in the Federal district court, seeking to enjoin execution of the contract as violating the Alabama competitive bid law, Ala. Code 1975, § 41-16-50 et seq. The bid law provides:
 "All expenditure of funds of whatever nature for . . . the purchase of . . . equipment . . . involving seven thousand five hundred dollars ($7,500) or more, . . . made by or on behalf of . . . the governing bodies of the municipalities of the state . . . , except as hereinafter provided, shall be made under contractual agreement entered into by free and open competitive bidding, on sealed bids, to the lowest responsible bidder."
§ 41-16-50(a). The statute applies to municipalities and to various other political subdivisions and agencies of the state, collectively referred to hereinafter as the "purchasing authority." "[A]ny bona fide unsuccessful bidder on a particular contract shall be empowered to bring a civil action in the appropriate court to enjoin execution of any contract entered into in violation of the provisions of this article." §41-16-61. "Contracts entered into in violation of this article shall be void. . . ." § 41-16-51(d). EGE petitioned for preliminary and permanent injunctions to stop the implementation of the contract, and the defendants moved for a summary judgment.
Question 1: "Did the City's request for bids constitute abinding concession by the City that the APCO 16 and the APCO 25alternatives are functional equivalents for purposes ofapplying the Competitive Bid Law?"
EGE contends in its briefs to this Court that the answer to the first certified question should be yes, but conceded the issue in oral *Page 860 
argument, stating that the request for bids was not a binding concession by the City. However, because this question is related to the second certified question, we will briefly address the issue.
The defendants argue that the most reasonable interpretation of the request for bids is that APCO 16 and APCO 25 were not presented as functional equivalents and that the City at least implicitly reserved the right to choose between alternatives. The City's request for bids stated that, in preparing the request, the City had "determined that two (2) major technologies exist in the public safety communications industry." The request closes as follows: "In the interest of fairness, these specifications provide for both technologies. Vendors are encouraged to propose either APCO 16 or APCO 25, or both." The "Preface" to the request for bids states: "The first phase of the project shall consist of an indepth review of the latest technologies on the market and how those technologies may benefit the City of Birmingham." The request continues: "Each bid should demonstrate the vendor's best technical approach to resolving the public safety communication needs of the city."
We conclude that such an "indepth review" and request for the vendor's "best technical approach" would be pointless if the City anticipated basing its decision solely on the prices of the bids. EGE has not presented any arguments, based upon a construction of the City's request for bids or otherwise, that support the conclusion that the request constituted "a binding concession by the City that the APCO 16 and the APCO 25 alternatives are functional equivalents for purposes of applying the Competitive Bid Law." Judge Acker states in the order certifying these questions that EGE and Motorola both acted in a manner indicating their understanding that the issue in the City's selection process was a comparison between competing technologies and systems as well as between prices. We conclude that the most reasonable interpretation of the request for bids is that it incorporates distinct alternatives without a concession of functional equivalency.
Question 2: "Under the facts, when a municipality issues arequest for bids in the form of alternatives without thereinstating a preference as between alternatives, does itthereafter retain the authority to determine which alternativeis in its best interest and to select that alternativeregardless of whether a lower bid is submitted by a responsiblebidder on another alternative?"
EGE stated at oral argument that the City "clearly" retained the authority to determine which system best met its needs, but argued that the EGE system met the City's objectives and that the City's decision was tainted by its reliance on what EGE alleges to be biased advice of the City's outside consultant. It was not clear at oral argument whether EGE also conceded the second component of the question, whether the City may select an alternative where there is a lower bid submitted by a responsible bidder on another alternative. Because both components of the question present an issue of first impression, the resolution of which is critical to this case, it is necessary to analyze the issue.
EGE contends in its briefs to this Court that, once it was determined to be a responsible bidder and to have submitted the lowest bid, the City did not have the authority to select Motorola's higher bid under another alternative. EGE cites no authority for this specific proposition or for the more general proposition that alternative bidding is prohibited or disfavored under Alabama's competitive bid law or is contrary to the purpose of the law; nor does EGE submit that the bid law should or could be interpreted to prohibit alternative bidding.
EGE relies upon Poyner v. Whiddon, 234 Ala. 168, 174 So. 507
(1937), and Ward Int'l Trucks, Inc. v. Baldwin County Bd. ofEduc., 628 So.2d 572 (Ala. 1993). Neither of these cases, however, addresses a request for bids that expressly sets out alternatives allowing a vendor or supplier to bid on any or all of the alternatives. In Poyner this Court held that the bid law would void a contract "let to the highest, not the lowest responsible bidder." 234 Ala. at 171, 174 So. at 509-10. In the present case, it is clear that the bid law would void any contract entered into by the City for a particular alternative where *Page 861 
there was a lower bid submitted by a responsible bidder on the same alternative, but Poyner is not relevant to whether the City may select a particular alternative where there is a lower bid submitted by a responsible bidder on another alternative. In Ward Int'l, this Court reversed a summary judgment for the defendants, the Baldwin County Board of Education and Moyer Ford Company, holding that the plaintiff, Ward International Trucks, Inc., had submitted substantial evidence that the Board violated the competitive bid law and that it had acted arbitrarily in contracting with Moyer Ford; the evidence tended to show that the Board ignored the advice of its attorney and staff members in accepting the plaintiff's bid. Ward Int'l, 628 So.2d at 574. We find that that case may be relevant herein to the question whether the City abused its discretion in selecting a particular alternative among those included in the request for bids, but that case does not address the underlying question, that of the appropriateness under the bid law of the practice of requesting alternative bids.
We hold that the practice of requesting alternative bids, as the City has done in this case, is consistent with the Alabama competitive bid law.[3] It is a well-established proposition in our law that competitive bidding does not require an award to go simply to the lowest bidder, but to the lowest responsible
bidder. Ala. Code 1975, § 41-16-50(a); see White v. McDonaldFord Tractor Co., 287 Ala. 77, 248 So.2d 121 (1971). The factors to be considered in determining the lowest responsible bidder are prescribed by statute. The bid law states: "When purchases are required to be made through competitive bidding, awards shall be made to the lowest responsible bidder taking into consideration the qualities of the commodities proposed to be supplied, their conformity with specifications, the purposes for which required, the terms of delivery, transportation charges, and the dates of delivery." Ala. Code 1975, §41-16-57(a). Thus, the statute itself provides a measure of discretion within which the purchasing authority may discriminate among products and vendors. One general means of discriminating among products that has been upheld under the bid law is for the purchasing authority to formulate bid specifications that are reasonable and appropriate, although narrowly tailored to qualify a product with particular characteristics. See White v. McDonald Ford, supra. We discern no meaningful distinction between the practice of determining the lowest responsible bidder or the practice of formulating reasonable bid specifications around a particular type of product predetermined by the purchasing authority to meet its needs and the practice of selecting among bids on expressly defined alternative specifications.[4]
Our cases make it clear that the purchasing authority's determination of the lowest responsible bidder and its formation of bid specifications may be exercised with a wide margin of discretion. In Carson Cadillac Corp. v. City ofBirmingham, 232 Ala. 312, 167 So. 794 (1936), the plaintiff brought an action against the City, seeking an injunction to compel the City to modify its bid specifications for water pipe couplings for an industrial water supply project. The plaintiff claimed that it could not meet the specifications and that if they were allowed to stand then only one company could successfully bid on the project. The trial court denied the injunction, and this Court affirmed, stating: *Page 862 
 "From the averments of the bill, it is apparent that the appellant . . . seeks to compel the commission to modify its specifications so that complainant may submit bids or prices for the sale of its bolted joint couplings for the steel pipes, . . . on the theory that appellant's coupling is the equal or superior of any such coupling obtainable.
 "To grant such relief would be to substitute the judgment of the court and its process for the judgment and discretion of the Engineering Commission as to technical matters within the field of engineering."
232 Ala. at 317, 167 So. at 798.
In Mitchell v. Walden Motor Co., 235 Ala. 34, 177 So. 151
(1937), Henry County had selected a bid for Chevrolet trucks over the lower bid for Ford trucks. This Court concluded that the local competitive bid law did not apply, but, if it had applied, that there would have been no violation. The Court noted: "In determining who is the lowest responsible bidder, the proper authorities may take into consideration the quality of the materials as well as their adaptability to the particular use required." 235 Ala. at 38, 177 So. at 154. Therefore, the Court concluded that, absent a showing that the county did not honestly exercise its discretion in selecting a particular make of truck, the contract would not be invalid, even where there was a lower bid for trucks of another make.Id.
In White v. McDonald Ford, supra, the Alabama Highway Department had solicited bids for tractors to cut grass along state highways. The specifications had been drawn around the Massey-Ferguson turf tractor, because the Department's engineers "agreed that this type tractor was best suited for the purposes for which the tractors were required."287 Ala. at 79, 248 So.2d at 123. An unsuccessful bidder who had submitted a lower non-conforming bid based upon a Ford tractor brought an action to enjoin execution of the contract. The specific question before the Court was whether, under the bid law, "specifications [could] be drawn to fit a particular article or piece of equipment which has been determined to be suitable for the needs and purposes required prior to the time the equipment is requisitioned." 287 Ala. at 80, 248 So.2d at 123. The trial court granted the injunction, but this Court reversed, stating:
 "[The] appellee contends that the admission by the State that the Massey-Ferguson turf tractor was used to write the specifications is sufficient in and of itself to void the contract without reference to the intent with which the act was done. We cannot agree that our legislature intended such a result. The wording of the statute itself follows very closely some of the language used by this Court in [Mitchell v. Walden Motor Co., 235 Ala. 34, 177 So. 151 (1937)], wherein this Court said that in determining who is the lowest responsible bidder the proper authorities may take into consideration the quality of the materials as well as their adaptability to the particular use required."
287 Ala. at 84, 248 So.2d at 127-28. The Court emphasized that "State authorities should have discretion in determining who is the lowest responsible bidder." 287 Ala. at 86,248 So.2d at 129.
In International Telecommunications Systems v. State,359 So.2d 364 (Ala. 1978), the State solicited bids for replacement crystals for radios installed in State Trooper automobiles. The request for bids "specified GE parts of different serial numbers 'or equal.' " The plaintiff submitted the lowest bid, but both of the types of crystals it offered were determined to be inferior, according to the tests performed by the chief radio engineer for the Department of Public Safety. GE was determined to be the lowest responsible bidder and was awarded the contract. In affirming the trial court's denial of injunctive relief, this Court relied upon White v. McDonaldFord, and held that the testing procedures employed by the State constituted a nonarbitrary basis upon which the State could legitimately discriminate among the respective products. 359 So.2d at 366-68.
Finally, in Mobile Dodge, Inc. v. Mobile County, 442 So.2d 56
(Ala. 1983), the sheriff's department requested bids on new patrol cars. The specifications required heavy-duty full length frames and front and rear coil-spring suspension systems. An unsuccessful *Page 863 
bidder, who submitted a nonconforming lower bid, brought an action for injunctive relief, alleging that the specifications had been intentionally drawn to exclude it from the bid process. The trial court denied the injunction, and this Court affirmed, stating:
 "While it is true that, due to the fact that all Chrysler products are manufactured with unitized bodies and torsion bar suspension systems, Mobile Dodge is effectively excluded from bidding on patrol cars for the Mobile County Sheriff's Department, we cannot upon the record conclude that the specifications calling for full frames and coil spring suspension systems are . . . arbitrary and capricious. . . . Nor are we able to find any evidence . . . contrary to the trial court's finding that the county officials engaged in a reasonable and rational process in selecting the requirements most suitable to meet their needs. . . ."
442 So.2d at 60-61 (citation omitted).
The practices employed by a purchasing authority in determining the lowest responsible bidder and in formulating narrow bid specifications, which the previous cases hold may be exercised within the authority's discretion, are very similar to the process that the City alleges it employed with the use of alternative bidding in this case. A purchasing authority's determination of the lowest responsible bidder is to be, in part, based upon consideration of "the qualities of the commodities" and "the purposes for which required,"see Ala. Code 1975 § 41-16-57(a), factors that should be, along with price, also essential considerations in selecting among alternative bids. Here the request for bids makes it clear that the City intended to review the competing technologies reflected in the bid alternatives in relation to resolving the public safety communication needs of the City. The City alleges that, based upon its review, APCO 25 was determined to be best suited to the City's needs.
In the cases upholding the practice of formulating bid specifications around a particular type of product, this Court has consistently deferred to the honest exercise of discretion by purchasing authorities in determining that the products meeting such specifications are those that will best fulfill the authority's needs. The process of formulating alternative specifications, taking bids, and selecting the alternative that will best fulfill the authority's needs should be entitled to no less deference. The City alleges that in this case it requested bids on various products meeting alternative specifications that could potentially meet its needs, and then, with the various qualities, capabilities, and prices in mind, decided that the higher-priced APCO 25 alternative would better suit its objectives. The principal difference between the practice of formulating narrow bid specifications, previously upheld by this Court, and the practice of using alternative bids appears to be that, in alternative bidding, the purchasing authority would have more detailed product information and would have received competitive bid prices before determining the product characteristics that will best suit its objectives.
That the access to price information is an advantage to the purchasing authority is reflected in the defendants' argument here that alternative bidding is supportable as a policy matter. The defendants note, for instance, that if the City had decided, before requesting bids, that its preference was for technology meeting the APCO 25 Interim Standard, bid specifications could have been drawn based upon that standard alone; a request for bids would have been issued; Motorola would have known that it alone could respond; and Motorola would have had an opportunity to inflate its profit margin in responding to the bid. The defendants contend that the request for alternative bids widened the options available to the City while also maintaining price competition, and that the City benefited from the knowledge of respective prices and features when deciding among the alternative systems.
Arguments against the validity of alternative bidding stem from concern that the process could be used as a subterfuge to select a preferred vendor's product by means of bid specifications specifically drawn to a particular vendor's product, or by requesting bids among alternatives that are not in fact unique in a manner related to the use of the product and to the objectives of the purchasing *Page 864 
authority for which it is to be acquired. It is evident from the discussion of the cases discussed above that narrow bid specifications or even specifications based upon a specific vendor's product do not ipso facto violate the competitive bid law. See Mobile Dodge, 442 So.2d at 60; InternationalTelecommunications Systems, 359 So.2d at 366. However, this Court has warned that bid specifications may not be drawn in bad faith:
 "[I]f the specifications were intentionally drawn so as to exclude others in order to purchase from a favored bidder because of some bad or improper motive, on the part of State officials, then the practice could not be condoned. . . .
". . . .
 ". . . The single most important requirement of the Competitive Bid Law is the good faith of the officials charged in executing the requirements of the law."
White v. McDonald Ford, 287 Ala. at 82, 86, 248 So.2d at 125,129. Our cases interpreting the bid law also note that a purchasing authority's determination of the lowest responsible bidder or use of narrow specifications may violate the competitive bid law if the authority acts irresponsibly, impulsively, or without reason, and, therefore, arbitrarily and capriciously. Mobile Dodge, supra; InternationalTelecommunications Systems, supra; White v. McDonald Ford,supra.
It is clear that a purchasing authority must have an articulable and reasonable basis upon which to determine that a particular bidder is the lowest responsible bidder or upon which to employ narrow bid specifications to qualify a product with particular characteristics, and we think it also clear that that basis must be related to the use of the product and to the objectives of the purchasing authority for which it is to be acquired. No less is required where the purchasing authority selects among bids on alternative specifications. Thus, the acceptance of alternative bidding does not introduce any truly new phenomena or risks into the competitive bid process and our current bases of review of a purchasing authority's decisions are already suited to correct any abuse of the process. Accordingly, the question whether the process employed here by the City violated the competitive bid law should be resolved with reference to this opinion and the precedents discussed herein.[5]
Question 3: "Under the facts, is the City's negotiated contractwith Motorola exempt from Alabama's Competitive Bid Law underAla. Code (1975), § 41-16-51[(a)(13)], as a purchase for whichthere is only one vendor or supplier?"
Question 4: "If competing bids meet the same stated'objectives,' does the mere 'uniqueness' of features within ahigher bid create a basis for a 'sole source purchase' from thehigher bidder?"
Section 41-16-51(a), Ala. Code 1975, provides that "the competitive bidding requirements of this article shall not apply to: . . . (13) Contractual services and purchases of commodities for which there is only one vendor or supplier." The leading case in Alabama defining the "sole source" exception to the bid law is General Electric Co. v. City ofMobile, 585 So.2d 1311 (Ala. 1991). The district court essentially asks this Court for a determination of whether this contract meets the mandate of General Electric and is therefore exempt from the bid law. The parties allotted considerable time at oral argument to addressing the merits of this exception and the applicability of General Electric, but *Page 865 
no reason was given, even when specifically asked for, why this Court is required to, or otherwise should, reach this issue if we were to answer the first two questions in favor of the defendants.
The Motorola contract is a "sole source" contract only if the system based on the APCO 25 Interim Standard is unique in a manner "substantially related to the intended purpose, use, and performance" of the communications system, and if other similar communications systems "cannot perform the desired objectives" of the City. 585 So.2d at 1315-16. Thus, an answer to questions 3 and 4 would require a resolution of the technical debate between the parties regarding the achievability, features, and capabilities of systems complying with the respective APCO standards, the resolution of which is for the trier of fact. Even if we were to answer that the contract did not qualify under the sole source exemption to the bid law, the issue would then be whether the City's contract with Motorola violated the competitive bid law. EGE's arguments that the bid law was violated are, first, that alternative bidding is not allowed by the bid law, an argument abandoned by EGE at oral argument and decided in the defendants' favor here; and, second, that the conduct of the City's outside consultant tainted the bidding process, an argument addressed below. Thus, even if questions 3 and 4 were answered in EGE's favor, the effective result would be to implicate questions 1, 2, and 5 which we answer herein; there is no reason to address the questions concerning the sole source exception to the bid law.[6]
Question 5: "Is the fact that the independent consultantemployed by the City cooperated closely with Motorola to theextent of their mutually participating in the drafting ofcrucial documents, relevant in deciding any of the previousquestions?"
We interpret this question broadly, as asking whether the full range of the conduct of Alton Hambric, the City's outside consultant, is relevant in deciding the critical issues in this case. We have held that the use of alternative bidding does not violate the bid law; thus, the overriding issue is whether for any other reason the City's contract with Motorola violates the competitive bid law. The issue turns on whether the City abused its discretion in selecting a system based upon the APCO 25 Interim Standard, the alternative upon which Motorola based its bid. This Court has held:
 "State authorities should have discretion in determining who is the lowest responsible bidder. This discretion should not be interfered with by any court unless it is exercised arbitrarily or capriciously, or unless it is based upon a misconception of the law or upon ignorance through lack of inquiry or in violation of law or is the result of improper influence."
White v. McDonald Ford, 287 Ala. at 86, 248 So.2d at 129. The conduct of the City's consultant is relevant in the review of the discretion exercised by the City.[7]
Because we have decided that alternative bidding is consistent with the competitive bid law, and that the practice should be governed by established precedent, we hold that judicial review of a purchasing authority's selection among bidding alternatives should be according to a standard commensurate with the review of a purchasing authority's determination of the lowest responsible bidder or its use of narrow bid specifications to qualify a product with particular characteristics. Therefore, the answer to question 5 is that the conduct of the City's outside consultant is relevant in determining whether the City's exercise of discretion was based upon "ignorance through lack of inquiry," or was "the result of improper influence," or was otherwise arbitrary or capricious. These are primarily questions of fact, *Page 866 
and we express no opinion as to whether any violation of the competitive bid law has occurred.
QUESTIONS ANSWERED.
MADDOX, SHORES, HOUSTON, INGRAM, COOK and BUTTS,* JJ., concur.
[1] The parties have not provided information as to the extent to which alternative bidding may be presently employed statewide in Alabama. However, Floyd Dyar, Birmingham's purchasing agent, stated that it was common practice for Birmingham to take alternative bids.
[2] "APCO" is an acronym for the Association of Public Communication Officers, an international organization whose function is to evaluate and approve proposed communications systems for use within the public sector.
[3] We note that other jurisdictions have upheld the validity of alternative bidding under applicable competitive bid laws. SeeL.G. De Felice Son, Inc. v. Argraves, 19 Conn. Sup. 491,118 A.2d 626 (1955); Otter Tail Power Co. v. Village of Wheaton,235 Minn. 123, 49 N.W.2d 804 (1951); Mayer Bros. Constr. Co. v.Erie Parking Auth., 189 Pa. Super. 1, 149 A.2d 495 (1959);Automatic Merchandising Corp. v. Nusbaum, 60 Wis.2d 362,210 N.W.2d 745 (Wis. 1973); see generally L.C. Warden, Annotation,Differences in Character or Quality of Materials, Articles, orWork as Affecting Acceptance of Bid for Public Contract, 27 A.L.R.2d 917 (1953).
[4] While the practice of determining the lowest responsible bidder is explicitly prescribed in the bid law, the practice of formulating bid specifications around a particular type of product is not. However, the latter practice has been held under certain circumstances by this Court to be consistent with the bid law. Accordingly, our holding that the practice of selecting among bids on expressly defined alternative specifications is consistent with the bid law, even though the practice is not explicitly prescribed in the bid law, is not unprecedented.
[5] We note that, after requesting and receiving alternative bids, the City rejected both bids and proceeded to negotiate a contract with Motorola for a price lower than the bid price. If the City had initially requested bids based on the APCO 16 Standard and subsequently rejected all bids, then had requested bids based on the APCO 25 Interim Standard and received only Motorola's bid, the City could have availed itself of the following provision of the bid law: "In the event only one bidder responds to the invitation to bid, the awarding authority may reject the bid and negotiate the purchase or contract, providing the negotiated price is lower than the bid price." Ala. Code 1975, § 41-16-50(a). We find, given the nature of the alternative bid process, that the actual procedure followed by the City is consistent with this provision of the bid law. But if, for example, the City had requested alternative bids, had selected APCO 16 technology, and had received more than one bid on that alternative, the bid law would require that the contract be awarded to the lowest responsible bidder.
[6] We note, without deciding the issue, that where alternative bidding is employed and only one bid is received on the alternative selected by the purchasing authority, the authority may be entitled to proceed to negotiate with that bidder without ever ascertaining whether the bidder qualifies under the sole source exception. See footnote 5, and § 41-16-50(a), Ala. Code 1975.
[7] Other facts alleged by EGE, such as the City's failure to follow the advice of its evaluation committee, may also be relevant in the review to determine whether the City abused its discretion. See Ward Int'l, supra.
* Although Justice Butts was not a member of this Court when this case was orally argued, he has listened to the tape of oral argument and has studied the record.